J.R. HOWELL (State Bar No. 268086)
jr@lojrh.com
LAW OFFICE OF J.R. HOWELL
2219 Main Street
Suite 436
Santa Monica, CA 90405
Tel: (323) 897-8656

ATTORNEY FOR PLAINTIFF,
JEFF GANAN AND THE PROPOSED CLASSES

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JEFF GANAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br>LINKEDIN CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-02968-VC<br><br>**DECLARATION OF J.R. HOWELL** |

**DECLARATION OF J.R. HOWELL IN SUPPORT OF PLAINTIFF JEFF GANAN'S OPPOSITION TO FARRELL'S MOTION TO CONSOLIDATE AND MOTION TO APPOINT INTERIM CLASS COUNSEL**

1. I, J.R. Howell, declare as follows:

## I. PERSONAL KNOWLEDGE AND PURPOSE OF DECLARATION

2. I am over the age of eighteen and competent to testify to the matters stated in this declaration.

3. I am counsel of record for Plaintiff Jeff Ganan in Ganan v. LinkedIn Corporation, Case No. 3:26-cv-02968-VC, pending in the United States District Court for the Northern District of California.

4. Except where otherwise indicated, the facts stated in this declaration are based on my personal knowledge. If called as a witness, I could and would testify competently to those facts.

5. I submit this declaration in support of Plaintiff Jeff Ganan's opposition to Plaintiff Nicholas Farrell's motion seeking consolidation and appointment of Farrell's counsel as interim class counsel.

## II. ROLE IN THE GANAN ACTION

6. I am sole counsel for Plaintiff Jeff Ganan in the Ganan action and proposed counsel for both the Nationwide Class and the California Class alleged in the Ganan matter.

7. Before filing the Ganan complaint, I personally investigated the claims asserted in that action.

8. The allegations in the Ganan complaint were drafted from factual investigation and analysis that I personally undertook in conjunction with a cybersecurity consultant, rebuilds (test models), interviews with personnel at affected tech companies, observation not solely of static code, but dynamic inspection of the code processes and related telemetry data, interviews with Mr. Ganan, together with legal research and review of technical materials relevant to the alleged conduct.

9. The Ganan complaint pleads claims and theories that differ materially from those pleaded in the Farrell action, including a federal ECPA / Wiretap Act claim, California Penal Code section 631, California Penal Code sections 638.50 through 638.51, California Penal Code section 502, California constitutional privacy, and intrusion upon seclusion.

10. In my professional judgment, those differences reflect a different class structure, different legal theories, and a materially different investigative record.

## III. INVESTIGATION BEFORE FILING GANAN

11. As part of my investigation, I reviewed underlying code, technical materials, test models in the form of representative inspected builds and representative rebuilds, telemetry behavior, and related artifacts relevant to the challenged conduct alleged in the Ganan complaint.

12. I investigated LinkedIn's alleged browser-extension probing, Spectroscopy DOM scanning, APFC / DNA fingerprinting, encrypted telemetry, apfcDfPK, globalThis.apfcDf, SyncCollectionHandler, session-linked reuse, feature flags including sync.apfc.headers and pemberly.tracking.apfc.network.interceptor, the hidden iframe at li.protechts.net, merchantpool1.linkedin.com, and related third-party auxiliary-channel allegations.

13. I worked with representative inspected builds and representative rebuilds to understand relevant code paths, the alleged telemetry processes, and the data flows implicated by the observed conduct.

14. Before filing Ganan, I consulted with a cybersecurity consultancy to assist in independently verifying technical claims I was investigating.

15. I evaluated LinkedIn's public facing documents concerning privacy, terms of service, LinkedIn User Agreement issues, including California choice of law and Santa Clara County forum selection, and I pleaded allegations concerning those issues in Ganan.

16. I investigated and pleaded a California Class that Farrell does not seek to represent.

17. Based on my review of the Farrell complaint and related public materials cited therein, it appeared to me that Farrell relied materially on public reporting and public materials derived from press releases or statements issued by or work performed by Fairlinked, BrowserGate, or persons working with or coordinating with my office.

18. In my professional judgment, Ganan reflects a materially broader independent investigation into the technical architecture underlying the challenged conduct than Farrell.

## IV. FAIRLINKED, BROWSERGATE, AND SUBJECT-MATTER ACCESS

19. The Farrell complaint cites or relies on public materials concerning Browsergate, including materials that I understand to have been published by, derived from, or based on press releases, statements, or work by Fairlinked, Browsergate, or my team.

20. Browsergate is Fairlinked e.V.'s investigation and public campaign concerning the challenged LinkedIn conduct.

21. Fairlinked e.V. is a trade association comprised of more than 100 technology companies and founders from approximately 15 countries that develop software for LinkedIn systems.

22. I serve as American counsel for Fairlinked e.V.

23. The Browsergate website publicly states that Browsergate coordinates with my office, and my investigative work with Fairlinked e.V. and Browsergate occurred before my office filed the Ganan complaint.

24. My involvement with Fairlinked e.V. and individuals and entities associated with those efforts gave me access to technical information, experts, industry context, and subject-matter expertise relevant to the challenged conduct alleged in Ganan.

25. I do not disclose privileged communications, confidential strategy, or source-protection details in this declaration. I provide these facts to explain the work I performed, my role in investigating the claims asserted in Ganan, and the relevance of that work to the Rule 23(g) inquiry.

26. Attached as **Exhibit A** is a true and correct copy of public materials containing Browsergate's statement regarding coordination with my office.

## V. CLASS STRUCTURE AND CLAIMS PLEADED IN GANAN

27. In my professional judgment, Ganan is the stronger and more complete vehicle for the proposed classes.

28. Ganan asserts a Nationwide Class tethered to federal law through the ECPA / Wiretap Act claim and a California Class for California-law claims. Although Farrell's causes of action are based solely on California state law, Farrell does not plead a California Class nor does he plead allegations justifying the extraterritorial application of California state law to injuries that, as pleaded, occur on the user side of the connections at issue.

29. Ganan includes pleaded allegations concerning LinkedIn User Agreement issues, including California choice of law and Santa Clara County forum selection. Farrell does not plead those issues in the same way.

30. Ganan reflects a materially deeper technical investigation and legal development than Farrell.

31. In my professional judgment, those differences are relevant to adequate representation of both the proposed Nationwide Class and the proposed California Class, as they pertain to a Rule 23(g) inquiry and Farrell's argument that his counsel are best suited to protect the interests of the class.

32. The investigative differences also bear on Rule 23(g), including the work counsel has done in identifying and investigating claims, counsel's knowledge of the applicable law, and counsel's ability to protect the proposed classes.

## VI. EXPERIENCE, QUALIFICATIONS, AND RESOURCES RELEVANT TO RULE 23(G)

33. I began practicing law in 2006 and am in my twentieth year of practice.

34. I have previously been appointed as class counsel by courts in both the federal and California state systems, including *Masalcas, et al. v. Guardian Arms LP*, Los Angeles Superior Court Case No. BC571867, where the class was certified on October 3, 2016, and I was appointed class counsel after a contested motion.

35. In federal court, I was appointed class counsel in *Mateer v. Peloton Interactive, Inc*., No. 22 Civ. 740 (LGS) (S.D.N.Y. Aug. 23, 2023), a matter involving both a nationwide class and three state law classes. I have also litigated and settled other putative class actions as well as California privacy law cases as discussed further below.

36. I hold a law degree *cum laude* from American University's Washington College of Law, an advanced degree in international and European law from the University of Paris Nanterre, a bachelor's degree from The George Washington University, and a certification in the Ethics of AI from the London School of Economics and Political Science.

37. My background in emerging technologies and data privacy began more than 15 years ago as an associate in Blank Rome LLP's Aerospace, Defense, and Government Services practice. I later founded my own practice and managed complex litigation and federal administrative matters in Washington, D.C. and Los Angeles, where I oversaw twelve personnel and managed related litigation matters. I since transferred part of that practice to work as a sole proprietor beginning in 2016.

38. I have testified to the California Senate and the California State Assembly on privacy-law matters, including proposed amendments to the California Invasion of Privacy Act (SB

690). I am a member of the American Bar Association's Science and Technology Committee and the California Lawyers Association's Privacy Law Section, serve as Vice Chair of the American Bar Association International Law Section's International Human Rights Committee, and am a nominee for the 2027 Executive Committee of the Privacy Law Section of the California Lawyers Association.

39. I write and speak on technology, privacy, and human rights issues, and my work has included an invitation to speak at a conference hosted by the Yale Journal of International Law at Yale Law School. I am also counsel of record in an appeal involving constitutional privacy under the United States and California Constitutions.

40. On February 24, 2026, I was trial counsel in Los Angeles Superior Court in a trial involving constitutional privacy under article I, section 1.1 of the California Constitution, a matter I litigated from pleading through verdict.

41. Another United States District Court has recognized what was termed my expertise in privacy law in another putative class action. *See Onisko & Scholz, LLP v. B.S.D. Capital, Inc.*, No. 2:24-cv-10314-MEMF-SK, Dkt. No. 56 (C.D. Cal. Oct. 27, 2025).

42. I am also plaintiffs' counsel in a matter filed under seal that proceeds in association with the California Department of Justice based on privacy issues affecting more than 300,000 California persons or business entities.

43. I have begun initial work with damages-modeling experts concerning user-side privacy violations of the type at issue in this matter, and my practice has relationships with litigation support vendors, economists and forensic accountants, electronic privacy experts, and class notice and settlement vendors.

44. In my professional judgment, these experiences and resources bear directly on my ability to represent the proposed classes because this case involves privacy law, statutory interception theories, computer-access theories, class structure, technical investigation, damages modeling, and management of electronically stored evidence.

45. Based on my previous experience and pre-existing relationships with relevant experts and litigation and class action support vendors, I have the resources to adequately serve the class's interests, per Rule 23(g).

## VII. PROPOSED JOINT PROSECUTION AGREEMENT AND RELATED COMMUNICATIONS

46. After the related-case proceedings began, Farrell's counsel requested to meet and confer with me. We held a videoconference on May 12, 2026, attended by myself, Mr. Arisohn, and Mr. Drury.

47. During that call, I stated my position that the parties should cooperate and that cooperation was in the class members' best interests.

48. During the same call, Farrell's counsel suggested consideration of dismissing one of the two cases to streamline the litigation. I did not agree to that suggestion, and it raised concerns because the two cases plead materially different claims and class structures.

49. To facilitate the litigation, Mr. Arisohn suggested what he described as a joint prosecution agreement, although specific terms were not discussed during that call. The following day, Farrell's counsel sent me a proposed Joint Prosecution and Attorney Fee Agreement.

50. Attached as **Exhibit B** is a true and correct copy of the proposed Joint Prosecution and Attorney Fee Agreement sent to me by Farrell's counsel.

51. The proposed agreement provided for a 40/40/20 fee split, under which Arisohn LLC would receive 40 percent, Drury Legal, LLC would receive 40 percent, and the Law Office of J.R. Howell would receive 20 percent of any fee compensation derived from the action, without regard to work performed.

52. The proposed agreement also provided for majority-vote decision-making among the three firms in the event of disagreement over litigation decisions and stated that, at class certification, Arisohn, Drury, and Howell would file a joint motion requesting appointment as co-lead class counsel.

53. The proposed agreement contained a withdrawal provision stating that, if one of the firms withdrew, the withdrawing firm would waive any contingent share of fee compensation and would instead be limited to hourly compensation for prior work.

54. The proposed agreement did not contain any provision requiring disclosure of the proposed fee allocation to the clients or to the Court.

55. During my call with Mr. Arisohn, I questioned both the proposed decision-making structure based on a majority vote of the three of us as well as the proposed fee structure, particularly in light of the earlier case-dismissal suggestion and the fact that Ganan pleads a California Class that Farrell does not.

56. I did not receive a satisfactory explanation for the decision-making structure or how the proposed 40/40/20 fee split had been derived in light of the distinct claims, distinct class structures, and differing investigative work reflected in the two actions.

57. After I stated my views, Mr. Arisohn stated words to the effect that if I did not agree to the proposed arrangement, Farrell's counsel would file a Rule 23(g) motion seeking appointment of themselves as sole interim class counsel.

58. I recount these events because they bear on proposed governance, allocation of control, fee allocation, and protection of the distinct class interests asserted in Ganan.

## VIII. PROFESSIONAL JUDGMENT CONCERNING INTERIM LEADERSHIP

59. In my professional judgment, sole appointment of Farrell's counsel would not best serve the interests of the proposed classes.

60. Farrell's counsel did not perform the same level of underlying technical and legal investigation that I performed before filing Ganan, did not plead the California Class, did not plead the same federal and California privacy theories, and did not plead the same choice-of-law and forum-selection allegations.

61. The proposed Joint Prosecution and Attorney Fee Agreement reflected a proposed control structure and fee allocation that did not, in my view, account for the distinct claims, distinct class interests, and differing investigative work reflected in the two actions.

62. Mr. Arisohn's earlier suggestion that one of the two cases be dismissed to streamline the litigation reinforced my concern that Farrell's counsel were not adequately accounting for the distinct interests asserted in Ganan.

63. In my professional judgment, these facts are relevant to whether Farrell's counsel are best able to represent the interests of the proposed classes within the meaning of Rule 23(g).

64. At a minimum, those facts weigh against appointing Farrell's counsel as sole interim class counsel over a combined proceeding that would include claims, classes, and investigative work they did not originate and have not pleaded.

## IX. CONCLUSION

65. Based on the work I performed, my investigation, my experience, my available resources, and the distinct claims and class interests pleaded in Ganan, I believe that appointing

Farrell's counsel as sole interim class counsel would not best serve the interests of the proposed classes.

66. If the Court determines that any interim leadership structure is necessary, I believe that any such structure should reflect the work actually performed, the distinct claims and classes asserted, and the need to protect both the proposed Nationwide Class and the proposed California Class.

67. I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 4, 2026.

Respectfully submitted,

J.R. HOWELL,
LAW OFFICE OF J.R. HOWELL

*/s/ J.R. Howell*

J.R. Howell (Cal. Bar No. 268086)
*Attorney for Plaintiff, Jeff Ganan*
*and the Proposed Classes*