J.R. HOWELL (State Bar No. 268086)
jr@lojrh.com
LAW OFFICE OF J.R. HOWELL
2219 Main Street
Suite 436
Santa Monica, CA 90405
Tel: (323) 897-8656

ATTORNEY FOR PLAINTIFF,
JEFF GANAN AND THE PROPOSED CLASSES

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF GANAN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br> v. <br> LINKEDIN CORPORATION, <br><br> Defendant. | Case No. 3:26-cv-02968-VC <br><br> **PLAINTIFF JEFF GANAN'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND EVIDENTIARY OBJECTIONS** |

Pl. Ganan's Opp. to MTD | 3:26-cv-02968-VC

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. LINKEDIN FAILS TO MEET THE APPLICABLE LEGAL STANDARDS ....................1

    *Rule 12(b)(6)* ..................................................................................................................1

    *Rule 12(b)(1)* ..................................................................................................................1

III. ARGUMENT ....................................................................................................................1

    A. LinkedIn Fails to Show Plaintiff Lacks Article III Standing. ...........................................1

        *The factual attack* ..................................................................................................2

        *The evidentiary objections* ....................................................................................3

        *LinkedIn's own evidence* .......................................................................................3

        *The facial attack* ...................................................................................................4

        *The empty-search point* .........................................................................................4

    B. LinkedIn's Consent Defense Fails. ...............................................................................5

    C. The Complaint Pleads Distinct Data Categories for Distinct Claims. ..............................8

    D. Plaintiff States Claims for Invasion of Constitutional Privacy and

        Intrusion Upon Seclusion. .......................................................................................9

    E. Plaintiff States a CDAFA Claim (Cal. Penal Code § 502). ...........................................11

        *Loss* ......................................................................................................................11

        *Authorization* ......................................................................................................13

    F. Plaintiff States a Claim Under CIPA Section 631. ........................................................14

        *Contents* ..............................................................................................................15

        *In transit* .............................................................................................................15

        *Reading and use* ..................................................................................................16

        *Aiding and abetting* .............................................................................................17

    G. Plaintiff States a Claim Under CIPA Sections 638.50 and 638.51. ...............................18

    H. Plaintiff States a Claim Under the Federal Wiretap Act (18 U.S.C. §§ 2511, 2520). ......19

IV. CONCLUSION ................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................1

*Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983) ...................................................2

*BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015) ....................................................19

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ...............................6

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) ...............................1, 2

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020)...........................................20

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) ...................................................5

*California v. Greenwood*, 486 U.S. 35 (1988)....................................................................10

*Callahan v. Ancestry.com Inc.*, 2021 WL 783524 (N.D. Cal. 2021) .....................................2

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .................................................2

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) .............................................14, 17

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021)................................................12

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024);

No. 23-cv-02431-VC (N.D. Cal. June 6, 2025) ............................................5, 8, 13

*Doe v. Eating Recovery Center*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................................16

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ...........................................6

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023)................................12

*Douglas v. U.S. Dist. Ct. ex rel. Talk Am., Inc.*, 495 F.3d 1062 (9th Cir. 2007) .............................6

*Goldstein v. Rumble Inc.*, 2026 WL 1406766 (C.D. Cal. 2026).....................................15, 20

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................8

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ...................................18

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022),

aff'd, 2024 WL 937247 (9th Cir. 2024) ......................................................6, 15

*Heiting v. HP Inc.*, 2025 WL 2993673 (Cal. Super. Ct. 2025)..............................................19

*Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023);

2024 WL 3738055 (C.D. Cal. 2024) ..............................................13, 14, 16, 17

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009)......................................................11

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ........................................2

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)............................................12

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767

(N.D. Cal. 2019)..................................................................................5, 7, 11

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ..........2, 4, 7, 9, 11, 17

*In re Meta Android Privacy Litig.*, 2026 WL 1279416 (N.D. Cal. 2026) ...............................10, 11

*In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650 (N.D. Cal. 2024) ...................................12

*In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP (N.D. Cal. Aug. 6, 2025) ..................18

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ...........................................................15, 20

*Intus Care, Inc. v. RTZ Assocs., Inc.*, No. 4:24-cv-01132-JST (AGT)
    (N.D. Cal. Apr. 23, 2026)......................................................................................................13

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023);
    2022 WL 1744107 (9th Cir. 2022) ...............................................................................6, 8, 17

*Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989 (S.D. Cal. 2024) ....................................17

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................................9

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ...........................................3

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................................................6

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080 (9th Cir. 2003).....................................................3

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ...................................................................1, 2

*Lineberry v. AddShopper, Inc.*, 2025 WL 551864 (N.D. Cal. 2025)......................................12, 13

*Love v. Ladder Fin., Inc.*, 2024 WL 2104497 (N.D. Cal. 2024)....................................................16

*Martin v. Sephora USA, Inc.*, 2023 WL 2717636 (E.D. Cal. 2023) .............................................17

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021).....................................................16

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ...................................19

*Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025)................................18

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........................................18

*NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954 (N.D. Cal. 2014).............................14

*Ornelas v. Randolph*, 4 Cal. 4th 1095 (1993) ..............................................................................12

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) .................................................3

*Ortiz v. Foris Dax, Inc.*, No. 25-cv-08950-EMC (N.D. Cal. May 21, 2026) ...............................18

*Palacios v. Fandom, Inc.*, 2024 WL 5494527 (Cal. Super. Ct. 2024).........................................19

*Perez v. Romantix Online, Inc.*, 2025 WL 3085786 (N.D. Cal. 2025) ..........................................8

*Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014)...............................................13

*Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332 (N.D. Cal. 2024) ..............................................6

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .........................................................4, 10

*Pratt v. Higgins*, 2023 WL 4564551 (N.D. Cal. 2023).................................................................12

*Price v. Headspace, Inc.*, 2025 WL 1237977 (Cal. Super. Ct. 2025)...........................................18

*Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D. Cal. 2025) ..........................................10

*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024)........................................17

*Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025).............................................12

*Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671 (Cal. Super. Ct. 2025)..................................19

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)................................................1, 2

*Sass v. Roblox Corp.*, No. 23-cv-04146-VC (N.D. Cal. Apr. 16, 2025)..................................11, 12

*Saunders v. Superior Court*, 27 Cal. App. 4th 832 (1994) ............................................................17

*Sisti v. Bosley, Inc.*, 2026 WL 1223927 (C.D. Cal. 2026) ...............................................................8

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) .................................................................8

*Tavernetti v. Superior Court*, 22 Cal. 3d 187 (1978).....................................................................17

*Torres v. SeatGeek, Inc.*, 2026 WL 1495202 (N.D. Cal. 2026)................................................4, 10

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................................................2, 4

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2016) .........................................................14

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008)......................................................15, 18

*Verio Healthcare, Inc. v. Superior Court*, 3 Cal. App. 5th 1315 (2016) .......................................12

*Washington v. Flixbus, Inc.*, 2025 WL 1592961 (S.D. Cal. 2025) ..................................................8

## I. INTRODUCTION

LinkedIn's motion asks the Court to dismiss a complaint Ganan did not file. LinkedIn attacks an extension-only theory, passive receipt of ordinary browser data, generalized policy language, and an incomplete vendor contract. The Complaint pleads something different: active interrogation, concealed client-side code executing on Ganan's own computer, Chrome-barrier circumvention, extension enumeration, browser-and-device fingerprinting, hidden outside-recipient channels, and session-linked data propagation. Compl. ¶¶ 4-9, 36-75, 91-100, 115, 194-208.

## II. LINKEDIN FAILS TO MEET THE APPLICABLE LEGAL STANDARDS

*Rule 12(b)(6)*. Instead of taking the truth of Plaintiff's plausibly asserted allegations, LinkedIn disputes Ganan's factual bases, which is proper grounds for denying the motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Rule 12(b)(1)*. LinkedIn's Rule 12(b)(1) attack fares no better, whichever form it takes, as the facial attack fails against the six pleaded injuries and the factual attack rests on inadmissible evidence that impermissibly intertwines with the merits. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143-44 (9th Cir. 2024); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039-40 (9th Cir. 2004). LinkedIn's dispute of material facts dooms the Motion to Dismiss.

## III. ARGUMENT

### A.    LinkedIn Fails to Show Plaintiff Lacks Article III Standing.

Ganan has standing because the Complaint pleads a completed intrusion into his browser and computer. The Complaint pleads injury: (1) covert interrogation of Ganan's browser and computer, (2) disclosure of identity-linked session data to an outside recipient, (3) roughly $100 in protective expenditures, (4) investigation time, (5) consumption of processing, network, and storage resources, and (6) ongoing exposure from his continued professional need to use LinkedIn. Compl. ¶¶ 26, 36-62, 67-75, 99-100, 179, 185, 218. The code executed on his device, probed his browser environment, processed presence-or-absence information, assembled session-linked fingerprinting signals, disseminated to undisclosed third parties for undisclosed uses, and operated

inside his logged-in LinkedIn account, without consent. Compl. ¶¶ 36-62, 91-100, 197-208. Intrusion is a recognized privacy injury. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117-20 (9th Cir. 2020). And, dissemination injures where internal retention would not, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432-33 (2021). LinkedIn's declarant admits providing HUMAN "with access to device fingerprinting signals." Seymour Decl. ¶ 23. LinkedIn contests the first two injuries and never addresses the last. Mot. § III.B n.9.[1]

*The factual attack*. Where, as here, the jurisdictional facts are intertwined with the merits, the Court applies the summary-judgment standard and must leave genuine disputes of material fact to the trier of fact rather than resolve them on the motion. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 n.6, 1143-44 (9th Cir. 2024); *accord Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039-40 (9th Cir. 2004). Every premise of the factual attack, data "publicly accessible," routine, never identifying, never meaningfully shared, is a merit of a statutory or privacy claim.[2] That each of these premises is genuinely contested is the subject of Ganan's concurrently filed Request for Judicial Notice, which places before the Court the browser-makers' own documentation and the peer-reviewed security-and-privacy literature.[3] *See* Pl. RJN, Howell Decl. Exs. A–FF. Those genuine, merits-intertwined disputes preclude resolution of the 12(b)(1) motion in LinkedIn's favor.

---

[1] The market-value-of-data theory LinkedIn attacks under *Lineberry* and *Callahan* is pleaded by Farrell in a separate action related under Civil L.R. 3-12 but not consolidated. Ganan pleads out-of-pocket dollars, Compl. ¶¶ 185, 218, satisfying *Callahan*'s own formulation that a plaintiff allege he "lost dollars of his own." *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *4-*5 (N.D. Cal. 2021).

[2] Each premise of the factual attack decides a merits element: whether the data was "publicly accessible" governs the CDAFA "without permission" element and the reasonable-expectation inquiry, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022) (analogous provision under CFAA); whether the signals are "routine" and non-identifying decides the privacy claims' elements and the identity linkage standing requires, *In re Facebook*, 956 F.3d at 603, 607; and whether the data was "meaningfully shared" is the disclosure element of the section 631 and Wiretap Act claims and the dissemination injury, *TransUnion*, 594 U.S. at 432-33. The Court may not resolve merits-decisive facts on a factual jurisdictional attack. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Safe Air*, 373 F.3d at 1039-40.

[3] The allegations LinkedIn purports to disprove rest on Ganan's own inspected-code facts, not the BrowserGate report alleged by *Farrell*. Compl. ¶¶ 36-62.

*The evidentiary objections*. Ganan objects to Seymour paragraph 24 and Exhibit A under Federal Rules of Evidence 602, 701, 801-805, 901, 106, and 401-403.[4] At most, Exhibit A shows contractual words. It cannot prove actual data flows, compliance, or the absence of injury. Incorporation by reference and judicial notice supply nothing more: neither establishes the truth of disputed facts, and the Complaint neither quotes nor relies on the DPA. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1003 (9th Cir. 2018). Ganan's separately filed Objections and Response to LinkedIn's Request for Judicial Notice addresses these and the Peelish exhibits. If the Court nonetheless credits either, Ganan requests targeted jurisdictional discovery into the full contract stack, transmission schemas, and HUMAN's receipt, retention, and use of session-linked data. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

*LinkedIn's own evidence*. If the Court considers LinkedIn's submissions at all, they create the disputes they were offered to resolve. LinkedIn's motion analogizes this case to the server-side tracker cases, where a website passively receives routine data on its own servers, but its declaration refutes that framing: Seymour admits LinkedIn's JavaScript executes in the member's browser to probe for extension resources, and that a separate system, "Spectroscopy," scans the page's DOM for the traces extensions leave, the device-side interrogation the Complaint pleads, not passive server-side receipt. Seymour Decl. ¶¶ 11, 15; Compl. ¶¶ 199-203.

The declaration then contradicts the premise that the data is routine and identifies no one. The proffered DPA classifies the same signals as "Personal Data," information that "can be used to identify, contact or locate a specific individual," even as the declaration calls them "standard" signals the browser "passively exposes." Seymour Decl. ¶ 22 & Ex. A. Nor does LinkedIn actually deny identity linkage. It denies linkage only "for revenue-generating, marketing, or advertising"

---

[4] Seymour lays no foundation for personal knowledge of HUMAN's internal processing, retention, derived outputs, cross-client use, or compliance; his no-reason-to-believe statement is absence of suspicion, not fact testimony. Fed. R. Evid. 602, 701. His statement that he understands Exhibit A to be a true copy does not authenticate it, *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002), and the exhibit is incomplete on its face: the DPA defines the "Agreement" to include statements of work and purchase-ordering documents describing the processing operations and LinkedIn's instructions — none submitted. HUMAN's certifications are hearsay offered for their truth, and a vendor's statements are not LinkedIn's party admissions. Fed. R. Evid. 801(c), 802, 805.

purposes, conceding it for the rest, and elsewhere describes support staff retrieving a specific, identified member's extension-detection results, all retained for two years. Seymour Decl. ¶¶ 17, 19.

Finally, the declaration never reaches much of the case: it is silent on the pleaded APFC propagation, the concealed cross-origin iframe routing data to an outside recipient, the consumption of Ganan's device resources, his investigation time, and his ongoing exposure — all of which stand unrebutted. Compl. ¶¶ 51-75, 97-104.

*The facial attack*. Ganan pleads what others did not, device-software interrogation inside an authenticated account, session-persistent fingerprinting, and onward vendor routing, the profile line *Popa* preserved and this district continues to sustain. *See, e.g.*, *Popa v. Microsoft Corp.*153 F.4th 784, 791 (9th Cir. 2025) (resolving standing on single-site session replay analytics, with no "embarrassing, invasive, or otherwise private information"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-600 (9th Cir. 2020). LinkedIn's reliance on *Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *4 (N.D. Cal. 2026), fails the same way: no authenticated account linkage, no admitted vendor routing, no session-persistent reuse — each pleaded here. Compl. ¶¶ 9, 55-62, 71-73. As for the "linkable, not linked" reading of ¶¶ 93-96, the facial attack takes the Complaint as true, and it pleads linkage in fact: the interrogation ran inside a logged-in, real-name session LinkedIn ties to name and employer, and the results were tied to Ganan's account. Compl. ¶¶ 9, 22-26, 95; *TransUnion*, 594 U.S. at 425. The intrusion is complete when the probe executes. That signals of this character routinely re-identify the individuals they supposedly cannot is the subject of an extensive fingerprint-uniqueness and re-identification literature. *See* Pl. RJN, Howell Decl. Exs. M–U, AA–FF. Identification is, at minimum, a disputed fact, not a pleading defect, which warrants denial of the 12(b)(1) motion.

*The empty-search point*. LinkedIn notes Ganan alleges no installed extension, but the injury is the unpermitted probe, not its yield. The code forced Ganan's browser to "test for, reveal, and process" extension presence-or-absence information regardless of what was installed. Compl. ¶ 50. The law does not excuse an unpermitted search because it came up empty for browser-extension data while continuing to probe and siphon data even after the original justification was

satisfied. Nor was the probed information "publicly accessible." Chrome's extension architecture exposes resources only through declared interfaces and provides no general enumeration mechanism, but LinkedIn's code circumvented that architecture, brute-forcing thousands of candidate identifiers and falling back to DOM-trace mining. Compl. ¶¶ 197-208; *see* Pl. RJN, Howell Decl. Exs. A–K (browser-maker documentation of extension isolation and research documenting the enumeration attacks that defeat it). Circumventing a system's access controls to reach information it does not expose is not access to "public" data. Whether LinkedIn "merely look[ed]" or circumvented is, at minimum, a disputed fact.[5]

The motion to dismiss for lack of Article III standing should be denied.

### B.    LinkedIn's Consent Defense Fails.

LinkedIn's consent defense fails on scope. Even assuming LinkedIn could prove Ganan assented to some version of its terms as a registered user, LinkedIn must show that a reasonable user would have understood those terms to authorize the particular conduct alleged. *Calhoun* requires consent to "the particular conduct, or substantially the same conduct," at issue, measured by whether a "reasonable user" would have understood the disclosures to reach it. *Calhoun v. Google*, 113 F.4th 1141, 1147-49 (9th Cir. 2024). General disclosures do not establish consent to the concealed extension-resource probing, recursive DOM scanning, APFC/DNA fingerprint propagation, hidden HUMAN iframe routing, and outside-recipient use the Complaint alleges. Consent is in any event LinkedIn's burden, an affirmative defense to the privacy, ECPA, and CIPA claims, and an element the Complaint negates, where applicable, on CDAFA and CIPA by pleading knowing access without permission — and "consent is a factual issue that cannot be resolved on the pleadings." *Doe I v. Google LLC*, No. 23-cv-02431-VC, Dkt. 198 at 6 (N.D. Cal. June 6, 2025).[6]

---

[5] LinkedIn's own exhibits defeat its claim that extension detection reveals nothing private. The "Anti-Woke Tag" extension "[s]hows warnings about woke companies," Peelish Ex. 8, and the PordaAI extension is a "Haram Remover Islamic Ai filter for Muslims," Peelish Ex. 7 — so detecting them supports inferences of political orientation and religious affiliation, both protected categories. That LinkedIn never shows how a Muslim prayer-content filter breaches its User Agreement makes the anti-abuse rationale, at least, a disputed fact. Compl. ¶¶ 81, 93-94.

[6] This district resolves consent against the movant where a reasonable user could plausibly interpret the disclosures as not reaching the conduct at issue. *In re Facebook*, 402 F. Supp. 3d at

First, the Complaint pleads the privacy violations occurred without consent or disclosure. Compl. ¶¶ 2, 11, 21, 68, 74, 76, 83-90, 115-125, 179-80, 192-93, 217, 240, 244, 266, 270-72.

Second, LinkedIn's fact-based argument makes no effort to satisfy *Calhoun*'s reasonable-user and particular-conduct standards. It never discusses how the conduct the Complaint alleges would be viewed by a reasonable user, or whether the purported disclosures reach the facts alleged to be nonconsensual. The timing independently defeats the defense: the proffered User Agreement and Privacy Policy self-recite a November 3, 2025 effective date, but the Complaint challenges earlier collection, Compl. ¶¶ 34, 36, and a later posting cannot authorize earlier collection. *Douglas v. U.S. Dist. Ct. ex rel. Talk Am., Inc.*, 495 F.3d 1062, 1066-67 (9th Cir. 2007).[7] The Complaint likewise pleads violations occurring contemporaneously with page loads, with no disclosure prior thereto, Compl. ¶¶ 42, 128, 230, and consent secured after collection begins comes too late. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *3 (9th Cir. 2022) (CIPA requires "the prior consent of all parties").

Third, as to scope of consent, LinkedIn's argument that users consented to LinkedIn's receipt of data via passive disclosure misses Plaintiff's argument that active interrogation of users' devices was not disclosed or agreed to. Compl. ¶¶ 4, 35, 56, 68, 75, 116, 205. LinkedIn's lead point — that paragraph 90 concedes consent — misreads the pleading: paragraph 90 is a scope averment, alleging that any consent "did not amount to informed authorization for the covert, overinclusive, and session-linked browser interrogation alleged," Compl. ¶ 90. Nor does *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025), carry LinkedIn's burden: the disclosed, function-named anti-cheat pixel there is not the covert client-side enumeration of thousands of extension identifiers and recursive DOM scanning alleged here, and *Calhoun*'s scope inquiry is

---

789-90. The burden is the defendant's. *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024).

[7] *Hammerling* — LinkedIn's own case — refused consent where later screenshots gave "no indication" the disclosures matched the challenged period. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022), *aff'd*, 2024 WL 937247 (9th Cir. 2024) (unpublished). LinkedIn also has not put in the record the User Agreement version Ganan is said to have accepted, the screen by which he accepted, or when, *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *1-2 (N.D. Cal. 2024), and the Cookie Policy it invokes is browsewrap on its face, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022).

measured by the challenged conduct, not satisfied by a general "web browser and add-ons" reference a reasonable user reads as passive receipt of transmitted add-on data, not covert client-side inventory of installed software. LinkedIn's arguments about receiving web browser and add-on data raise substantial questions about scope,[8] whether a reasonable user would perceive that language as including the user-side active interrogation which causes the users' computers to transmit data, as opposed to LinkedIn's server-side passive receipt of routine mechanical data. After all, disclosure of merely receiving passively what a browser transmits as a by-product of operation is not disclosure of the full scope of the active interrogation methods alleged here. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 792 (N.D. Cal. 2019) (disclosure that providers might receive data did not come close to the alleged program). And some technologies alleged in the Complaint aren't even referred to in LinkedIn's proffered policy documents.[9] The Cookie Policy LinkedIn invokes fails the same tests. Its disclosure of "cookies and similar technologies (e.g., pixels and ad tags)" used "to collect data (e.g., device IDs)" describes passive, cookie-based identifiers — small tokens a browser stores and returns — not code that probes thousands of extension-resource paths and recursively scans the DOM to inventory a user's installed software. A reasonable user could plausibly read that cookie-and-security language as describing a different mechanism entirely — passive token storage, not active enumeration of installed software — so whether the disclosure reaches the covert extension interrogation and computer probing alleged is, at minimum, a fact question. Compl. ¶¶ 36-46. *See* Pl. RJN, Howell Decl. Exs. HH–LL (empirical studies finding that generalized disclosures rarely produce the actual notice or understanding on which LinkedIn's consent theory depends). The Cookie Policy carries the same pre-consent-timing and assent defects besides: counsel's June 2026

---

[8] The vendor line narrows consent rather than grants it: LinkedIn promised vendors act "only . . . on [its] behalf," while the Complaint alleges an outside recipient reusing session data for cross-client products. Compl. ¶¶ 69, 73; *Facebook Tracking*, 956 F.3d at 601-04.

[9] The "spectroscopyId" entry appeared only in later disclosures, Compl. ¶ 86, but consent must precede collection, *Javier*, *supra*; and the Cookie Policy sends readers to "our cookie tables," whose names "may change over time," Peelish Ex. 4 at. 2, tables LinkedIn did not submit and where the only extension-related entries would appear. Compl. ¶ 86.

capture of a page reciting a June 3, 2022 date proves neither the version in effect during the challenged period nor Ganan's assent to it, and consent to it remains LinkedIn's to prove.[10]

Fourth, where all-party consent is required, first-party consent would not authorize routing content-bearing session data to an outside recipient for its own use. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899–900 (N.D. Cal. 2023) (setting forth the party exception analysis); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) (applying CIPA party exception analysis to ECPA).

Lastly, every case LinkedIn cites as to consent shares the exact same feature this record lacks: a disclosure that named the challenged practice.[11] LinkedIn's argument, generic receipt-of-data language, purpose statements, a vendor line that limits consent, and undated cookie entries, named none. Consent would fail on scope regardless.

Because LinkedIn has not shown that a reasonable user would have understood its materials as disclosing or authorizing covert extension probing and subsequent downstream uses, DOM scanning, fingerprint propagation, or outside-recipient routing, the consent defense cannot support dismissal of any claim. Nor do any of LinkedIn's arguments meaningfully challenge the Complaint in those instances where consent is an element of the claim. The motion should be denied.

**C.      The Complaint Pleads Distinct Data Categories for Distinct Claims.**

LinkedIn's Section IV.B argument collapses categories the Complaint pleads separately. LinkedIn says Ganan has not plausibly alleged personal information, communication contents, or routing data. Mot. § IV.B. The Complaint pleads three categories for three sets of claims. For standing and the privacy claims, it pleads identifying browser and device data: extension traces, device fingerprints, cookies, session identifiers, and account-linked device data, collected inside a

---

[10] LinkedIn's contention that Ganan fails to plead how the collection "exceeded necessity," *see Doe 1 v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024), mistakes the record. The Complaint pleads the covert mechanics with particularity, Compl. ¶¶ 204-206, and proportionality to any anti-abuse need is a fact question unsuited to Rule 12.

[11] The policy named the challenged practice in each case LinkedIn cites. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018); *Sisti v. Bosley, Inc.*, 2026 WL 1223927, at *6 (C.D. Cal. 2026);* Washington v. Flixbus, Inc.*, 2025 WL 1592961 (S.D. Cal. 2025) (checkbox, named technologies). It named none here, and* Perez v. Romantix Online, Inc.*, 2025 WL 3085786 (N.D. Cal. 2025), is an evasive-pleading case inapposite to this record.

real-name network that can readily link them to identity. Compl. ¶¶ 9, 36-62, 67-75, 91-96.[12] For the CIPA section 631 and Wiretap Act claims, it pleads content-bearing page-context fields: URLs, referrers, paths, hashes, keywords, content categories, page sections, and user behaviors that "relayed what Plaintiff and class members were doing, viewing, and/or requesting" during live sessions. Compl. ¶¶ 168-70, 258-59. And for the pen-register claim, it pleads non-content dialing, routing, addressing, and signaling information. Compl. ¶¶ 225, 231-37, 241-43.

D.    **Plaintiff States Claims for Invasion of Constitutional Privacy and Intrusion Upon Seclusion.**

The Complaint pleads both privacy claims on a single factual core: LinkedIn-served code covertly interrogated Ganan's browser and computer for installed extensions, assembled a persistent device fingerprint, and tied the results to his logged-in account through mechanics engineered to avoid detection. Compl. ¶¶ 91-96, 197-208, 277-298. The claims are analyzed together, asking whether "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). LinkedIn moves on exactly those two grounds, no reasonable expectation of privacy and no highly offensive intrusion. Each fails.

The expectation-of-privacy attack weighs each collected datum in isolation, an item-by-item method the Ninth Circuit rejected: courts examine "whether the data itself is sensitive and whether the manner it was collected . . . violates social norms." *Facebook Tracking*, 956 F.3d at 603. An expectation of privacy can rest on "unwanted access to data by electronic or other covert means." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023). The Complaint pleads accumulation, not fragments: continuous probes against thousands of extension identifiers, probes designed to avoid user detection, recursive DOM scanning, and a device fingerprint joined to account data — a combination pleaded as identifying and as capable of supporting sensitive, protected-category inferences. Compl. ¶¶ 81, 91-96, 280-281; *see* Section

---

[12] The motion says one thing, but the exhibits say another: LinkedIn's proffered DPA classifies the signals in question as identifying "Personal Data," information that "can be used to identify, contact or locate a specific individual," while the motion calls them non-personal and routine. Seymour Decl. Ex. A.

III.C, *supra*; *see also* Pl. RJN, Howell Decl. Exs. V–Z (research that installed-extension sets and digital footprints can reveal protected-class traits, including religion and political orientation), Exs. AA–FF (re-identification of demographic and browsing data), Exs. GG (FTC staff report treating cross-device tracking as a privacy concern).[13]

LinkedIn's routine-identifier cases do not control. Every one is a server-side website-tracker case — pixels, beacons, or session replay.[14] None involved client-side code executing on the user's own device and circumventing its security architecture — and LinkedIn's own declarant confirms that its code does exactly that here. Compl. ¶¶ 198-203, 207-208; Seymour Decl. ¶¶ 11, 15. On materially similar device-side facts — code evading Android's sandboxing — the court sustained both claims: users reasonably believed Meta "would not accumulate such a 'vast repository of personal data' perfectly linked to their identities through covert behaviors." *In re Meta Android Privacy Litig.*, No. 3:25-cv-04674-RFL, 2026 WL 1279416, at *11 (N.D. Cal. May 11, 2026). It is the closest analogue: mobile-OS sandboxing there, Chrome's extension-isolation architecture here.

LinkedIn's voluntary-exposure theory fares no better. *Greenwood*'s voluntary-turnover rule does not reach information extracted by code-induced interrogation of a user's own device. 486 U.S. 35 (1988). Moreover, the circumvention allegations defeat the premise. Section III.A, *supra*; Compl. ¶¶ 49-50, 198-203. LinkedIn's suggestion that its disclosures "underscore" the absence of any expectation is a consent argument, its own burden, which fails per Section III.B, *supra*.

LinkedIn's offensiveness argument never engages the pleaded manner of the intrusion. It briefs offensiveness as data sensitivity alone, though its own lead authority makes offensiveness a

---

[13] LinkedIn quotes ¶ 264's phrase "not sensitive" as a concession. It is a scrivener's error the Complaint itself exposes. Paragraph 264 sits in the § 631 count, and its mirror paragraph, ¶ 179 — otherwise materially identical — pleads that the same routed data "includ[ed] sensitive information about the behavior and personal information concerning Plaintiff." *Compare* Compl. ¶ 264, *with id.* ¶ 179. The stray "not" contradicts the pleaded pattern, which controls either way. Compl. ¶¶ 81, 91-96.

[14] *Torres v. SeatGeek*, 2026 WL 1495202, at *4 (N.D. Cal. 2026) (pixels); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *6 (E.D. Cal. 2025) (health-website pixel); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *4-5 (S.D. Cal. 2025) (beacons). *Popa* decided standing only, on session replay of a single retail site, and reserved sensitive-information cases.

holistic, factual inquiry into the intrusion's degree, setting, and motives. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). The manner is pleaded in detail: circumvention of Chrome's extension-isolation architecture, execution deferred to browser idle, probes staggered so they would not launch "in one obvious burst," failed requests silently discarded, a hidden zero-by-zero cross-origin iframe, and client-side encryption, routing data third-parties for undisclosed re-use, each choice pleaded as intended to lower the likelihood users would detect the scan. Compl. ¶¶ 197-208. A factfinder could conclude that an intrusion engineered to escape detection egregiously breaches social norms, and whether collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage. *Facebook Tracking*, 956 F.3d at 606; *accord In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (courts should be reluctant to decide at the pleading stage how offensive a privacy intrusion is). *Meta Android* reserved dismissal for "routine commercial behavior. But Meta's behavior here is alleged to go far beyond that." 2026 WL 1279416, at *11. So too here.

The motion to dismiss the constitutional-privacy and intrusion-upon-seclusion claims should be denied.

### E.      Plaintiff States a CDAFA Claim (Cal. Penal Code § 502).

The Complaint alleges that LinkedIn violated seven subdivisions of Cal. Pen. Code § 502 — subsections (c)(1), (2), (3), (4), (6), (7), and (8). Compl. ¶¶ 192, 210-217. LinkedIn moves on two grounds: that Ganan pleads no damage or loss and that any access was authorized. Both fail. LinkedIn does not meaningfully attack the contaminant or circumvention allegations.

***Loss***. LinkedIn erroneously argues that § 502 confines damage or loss to cover only the cost of remediating physical damage, a position previously rejected by this Court. *See, e.g. Sass v. Roblox Corp.*, No. 23-cv-04146-VC, slip op. (N.D. Cal. Apr. 16, 2025) (Dkt. 146).

The statute authorizes suit by any owner who "suffers damage or loss by reason of a violation," providing that compensatory damages "shall include any expenditure reasonably and necessarily incurred … to verify that a computer system … was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1). "Shall include" is a term of enlargement, not limitation. *Ornelas v. Randolph*, 4 Cal. 4th 1095, 1101 (1993) ("'includes' [is] ordinarily a term

of enlargement rather than limitation"). The verification-cost clause "is best read as ensuring one type of damage is cognizable, not limiting damages to that alone," and "the plain reading of 'damage or loss by reason of a violation' of CDAFA is that any loss due to the CDAFA violation is cognizable." *Lineberry v. AddShopper, Inc.*, No. 23-cv-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). Applying that construction, this Court sustained a § 502 loss theory built on the ordinary costs of "responding to and trying to prevent" unauthorized access. *Sass v. Roblox Corp.*, No. 23-cv-04146-VC, slip op. (N.D. Cal. Apr. 16, 2025) (Dkt. 146).

Ganan pleads cognizable loss of more than one kind. Ganan pleads monetary expenditures of approximately $100.00 in "responding to and trying to prevent" unauthorized access. Compl. ¶¶ 100-101, 218. The assessment *funds* are a § 502(e)(1) verification expenditure in the statute's own terms, money spent to determine whether the access "was or was not" altered or damaged his data, and were reasonable and necessary given covert code that circumvented Chrome's security architecture and evaded detection. Compl. ¶¶ 197-208. The response costs are independently cognizable under *Sass* independent of any physical damage.[15]

Additionally, LinkedIn's code executed on Ganan's own computer and forced it to "expend processing time, network resources, storage interactions, and other computer services." Compl. ¶¶ 41-42, 99-100, 204. Depletion of a device's processing, storage, and network resources is cognizable § 502 damage or loss. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (examining even small harms due to battery depletion of battery and bandwidth); *see In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 657-59 (N.D. Cal. 2024) (loss sustained where the code "occupied storage space," made "devices work slower," and "used computer resources").[16]

---

[15] Investigation and verification costs are recoverable loss independent of any physical damage. *Verio Healthcare, Inc. v. Superior Court*, 3 Cal. App. 5th 1315, 1321 n.3 (2016) (§ 502(e)(1) "permits a civil action to recover expenses related to investigating the unauthorized computer access"); *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. 2023) ("loss" encompasses "costs related to fixing a computer" and "other consequential damages").

[16] Ganan does not assert, as Farrell does, the diminished market value of data and the loss of control over it. *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487-88 (N.D. Cal. 2021); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023).

Ganan additionally pleads loss from the misappropriation of his data. This Court has squarely held that "plaintiffs may allege damage or loss from the misappropriation of their data, so long as they articulate that theory of loss [in] a concrete way." *Lineberry*, 2025 WL 551864, at *2; *see Intus Care, Inc. v. RTZ Assocs., Inc.*, No. 4:24-cv-01132-JST (AGT) (N.D. Cal. Apr. 23, 2026) (Dkt. 117) (applying *Lineberry* to recognize a data misappropriation theory). The Complaint alleges that the misappropriated session data has realized, ascertainable market value: the outside recipient integrates it into products it sells to other clients and monetizes it through analytics and industry benchmarking. Compl. ¶¶ 73-75, 179. That is the concreteness the *Lineberry* plaintiffs lacked, where they pleaded only that they "suffer an economic loss every time their data is used and shared," with no allegation of the data's market value or how its misappropriation diminished it. 2025 WL 551864, at *2.

None of this resembles *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024), where the loss allegations failed because "there [was] no allegation that the investigation was undertaken to verify that [the plaintiffs'] 'data was or was not altered, damaged, or deleted,'" and the only other pleaded harm was conclusory "reduced storage." Ganan pleads what those plaintiffs omitted — a verification-directed expenditure, a measurable burden on his own device, and a concretely valued misappropriation loss. The Complaint need allege only one cognizable theory of loss; it pleads three.

***Authorization***. LinkedIn tethers its only other ground, that the access was authorized, to its consent defense, which fails for the reasons stated in Section III.B, *supra*. It also fails independently, because the Complaint pleads access "without permission," and satisfies both tests courts apply. Under the narrower test, access "in a manner that overcomes technical or code-based barriers," *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (quoting *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014)), Ganan alleges LinkedIn's code routed around Chrome's isolated-worlds architecture, exploited the narrow exposure created by web_accessible_resources, and fell back to DOM-trace mining when Chrome's restrictions blocked direct contact — mechanics LinkedIn's own declarant confirms. Compl. ¶¶ 197-203; *see* Seymour Decl. ¶¶ 11, 15. *Heiting* rejected access liability where the

defendant implanted nothing on the plaintiff's computer and all interactions occurred on the defendant's own website — the opposite of code executing on Ganan's device as alleged here. 709 F. Supp. 3d at 1020. Under the broader test, section 502 "merely requires knowing access," plus taking, copying, or using data "without permission," *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016) — conduct the Complaint pleads directly. Compl. ¶¶ 194-199, 208, 210-211.[17]

LinkedIn contests only loss and authorization, and the Complaint defeats both. The motion to dismiss the CDAFA claim should be denied.

### F.    Plaintiff States a Claim Under CIPA Section 631.

The Complaint pleads a fourth-clause section 631(a) claim. LinkedIn served concealed client-side code that commandeered users' own computers and forced them to broadcast a content-bearing duplicate of each live LinkedIn session — through covert transmission paths that include a hidden zero-by-zero cross-origin iframe, LinkedIn's telemetry channels, and cross-origin messaging components — to undisclosed outside recipients: LinkedIn's third-party data, anti-fraud, and anti-abuse partners, of whom HUMAN is the identified example. Compl. ¶¶ 56, 67-75, 172-176, 252, 254, 256-266. Those outside recipients were not parties to the user-LinkedIn communications; they tapped them, reading and using the contents for their own purposes. *Id.* ¶¶ 174-175, 263-265. The fourth clause reaches precisely that conduct: aiding, agreeing with, employing, or conspiring with a person who reads or attempts to read a communication in transit. Cal. Penal Code § 631(a); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024). And the Complaint pleads the predicate in the alternative under Rule 8(d): either LinkedIn routed the duplicated contents to those recipients, or those recipients intercepted them from the channel LinkedIn built, a pleading that reaches LinkedIn on the fourth clause either way. Compl. ¶ 264. LinkedIn's six grounds — no predicate, not contents, not in transit, no reading, no third-clause use, no aiding — fail. Consent, LinkedIn's burden under this all-party statute, fails per Section III.B, *supra*.

---

[17] *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 967 (N.D. Cal. 2014) (liability for using "technically-operable log-in information" to access systems the individual "knew he was not permitted to access").

***Contents***. "Contents" means information concerning the substance, purport, or meaning of a communication. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). The duplicated fields — content-category arrays, keywords, user behaviors, and referrer and page URLs — "relayed what Plaintiff and class members were doing, viewing, and/or requesting during their live LinkedIn sessions." Compl. ¶ 169; *see* Compl. ¶¶ 168-170, 258-259. That is what *Hammerling* requires. 615 F. Supp. 3d at 1093. URLs are contents when they reproduce a person's personal search engine queries. *Zynga*, 750 F.3d at 1108. Similarly, URLs are record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents. *See id*. at 1108-09; *Forrester*, 512 F.3d at 510 n.6. Whether the pleaded content-category, keyword, and behavior arrays cross that line is a fact question, not one resolvable on the pleadings.[18]

***In transit***. The interception occurs on the user's own computer, in California, at the instant of transmission, the heart of the statute. Section 631(a) reaches reading contents not only "while the same is in transit" but while a communication "is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). LinkedIn's code executes on Ganan's machine and forces that machine to broadcast the content-bearing page-context fields, simultaneously to LinkedIn and, through the concealed channel, to the outside recipient, at the moment they are sent. Compl. ¶¶ 172, 176, 260-263. The commandeered California computer is both the instrument and the situs: the contents are read while "being sent from" a place within this state. That satisfies the element on its face.

Casting the outside recipient as "a recipient" of the duplicate does not change this. "In transit" is a property of the user-LinkedIn communication and of the moment its contents are acquired. A wiretapper who splices his own equipment into a telephone and records the call is no less an interceptor because he keeps his own copy on his own device because the communication he reads is the caller's, captured as it transmits. So too here: the outside recipient reads the contents of the user-LinkedIn session, siphoned from the user's machine as the session is broadcast. That

---

[18] LinkedIn's own contrast case agrees. *See* Section III.H, *infra* (*Goldstein*). Paragraph 269 concedes nothing: it disclaims reliance on extension signals standing alone, saying nothing about the page-context fields ¶¶ 258-59 plead as contents.

the recipient maintained "its own persistent foothold" and "its own [undisclosed] cookies and cross-origin messaging channel," Compl. ¶¶ 69, 264, describes the tap.

LinkedIn's single contrary argument — that any data the recipient receives "necessarily flows after" the communication reaches LinkedIn because "its iframe loads only after a user's browser initiates a connection" — fails twice over. It is wrong on the pleading: the duplication happens at the source, on the user's device, at the instant of the broadcast, before anything "arrives" at LinkedIn's servers; there is no post-arrival hand-off to point to. Compl. ¶¶ 172, 260, 262. And it is an extrinsic account of LinkedIn's own architecture that contradicts the Complaint — a technical, factual contention a court may not resolve against the plaintiff at Rule 12. *Heiting* rejected the identical sequencing story on this iframe architecture. *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *9 (C.D. Cal. July 31, 2024). *Doe v. Eating Recovery Center* is the contrast that proves the point: there the third party received data only "after the communication ha[d] already traveled" to the operator's server — a downstream hand-off, not a tap on the sending device. 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). The narrower "in flight" concept LinkedIn imports from the federal Wiretap Act cannot displace the California statute's express reach to contents "being sent from" a place within the state.[19]

***Reading and use.*** *Love v. Ladder Fin., Inc.*, No. 23-cv-04234-VC, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024), dismissed because the plaintiff did not connect vendor receipt to vendor reading, learning, or own use — quoting only a vendor's generic public statements with no pleaded mechanism by which the vendor reached the data. Ganan pleads that connection directly: the hidden iframe, the cross-origin exchange, the recipient's own cookies and identifiers, session-linked values, and public materials describing product integration, analytics, benchmarking, and cross-client anti-fraud functionality. Compl. ¶¶ 56, 67-73. The recipient's use of what it acquires supplies the third clause, pleaded through its published policy that "Processor Data may be integrated into the Product and shared with other clients" and used for "general corporate

---

[19] *Heiting* held the duplicated communication is "first transmitted to Genesys's servers" "at the same time Plaintiff sends [a communication] to Defendant" — the same simultaneity pleaded here. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021), is inapposite: it read clipboard data at rest, not a live session stream broadcast from the device.

marketing and industry benchmarking purposes." Compl. ¶ 73. If the Court considers the Seymour Declaration, it at minimum confirms a factual dispute over recipient acquisition and processing: HUMAN received device-fingerprinting signals, and LinkedIn retained member-specific extension results. Seymour Decl. ¶¶ 19, 23. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024); *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978); Compl. ¶¶ 264-266.

*Aiding and abetting*. Ganan pleads knowing assistance under either scienter standard. The Complaint alleges LinkedIn selected the integration, embedded it in users' live sessions, concealed it, and "knowingly embedded a concealed access and transmission point" through which the outside recipient intercepted, accessed, or received the contents. Compl. ¶ 264; *see* ¶¶ 67-75, 179, 257, 262-266. That knowing provision of the covert channel is the aiding; LinkedIn need not have audited every downstream use, and the Rule 8(d) alternative independently reaches it if LinkedIn routed the contents itself. Compl. ¶ 264. Even on the common-law test, *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 845-46 (1994), the pleaded knowledge suffices; contrast *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024) (no knowledge alleged). LinkedIn cites the superseded March 2024 *Jones v. Peloton* order, but the same judge sustained the amended complaint: a vendor "functions as a third-party eavesdropper" where it uses "the data for their own benefit and not for the sole benefit of the party to the communication." 2024 WL 3315989, at *8 (S.D. Cal. 2024). So too *Heiting*, whose July 2024 order sustained the clause-four claim once mechanism and own-use were pleaded. Ganan pleads at the outset what those amendments added: a recipient "capable of using the recorded information for some other means." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899-900 (N.D. Cal. 2023); *see* Compl. ¶ 73.[20] The partial LinkedIn–HUMAN contract — which omits documents the DPA itself defines as part of the "Agreement" — and the declarant's "has not seen evidence" testimony are extrinsic and improper at Rule 12. *See* Section III.A, *supra*. A mandate permitting cross-client product integration does not forbid the challenged conduct; it describes it. The motion to dismiss the section 631 claim should be denied.

---

[20] *Accord In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (no exemption for own-benefit use). *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. 2023), involved a vendor acting "as an extension of the company" with no own-use allegations — the opposite of Compl. ¶¶ 73-74.

**G.    Plaintiff States a Claim Under CIPA Sections 638.50 and 638.51.**

The Complaint pleads that LinkedIn's fingerprinting and telemetry code, a "device or process," recorded and transmitted non-content dialing, routing, addressing, and signaling information ("DRAS") from Ganan's device. Compl. ¶¶ 228-37, 241-43. LinkedIn moves on two grounds: the pen-register claim is incompatible with the section 631 claim and may not proceed in parallel, and the data are not DRAS. Both fail.

First, a modern tracking stack can include both content-capture features and pen-register or trap-and-trace features. Recent authority rejects the argument that a tool cannot support a pen-register theory merely because it also captures content. The relevant question is whether the pleaded process records or captures non-content dialing, routing, addressing, or signaling information. *See In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, Order Denying Motion to Dismiss at 8-10 (N.D. Cal. Aug. 6, 2025); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-78 (C.D. Cal. 2024). Even still, Rule 8(d)(2)-(3) permits alternative and inconsistent claims, and this Count is expressly pleaded in the alternative. Compl. ¶ 225. And the counts describe different data, as Section III.C, *supra*, details: this Count pleads only non-content signals and disclaims the content allegations. Compl. ¶¶ 225, 231-32. *Mitchener* and *Price* dismissed counts that pleaded content-capture into the pen-register count itself[21] — an error paragraphs 231-32 avoid.

Second, the pleaded signals are DRAS. IP addresses of sites visited are "indistinguishable" from pen-register addressing data. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). The pleaded hostname, origin, port, and protocol signals identify source and destination, and the session-linked fingerprint values are "reasonably likely to identify the source." § 638.50(c). Section 638.50(b) "nowhere limits the term 'pen register' to telephones." *Ortiz v. Foris Dax*, No. 25-cv-08950-EMC, at *11 (N.D. Cal. May 21, 2026). And a qualifying "process" includes "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023).

---

[21] *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 852 (N.D. Cal. 2025) (content pleaded into the count); *Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super. Ct. 2025) (contents pleaded into the trap-and-trace count).

LinkedIn cites no decision adopting its identify-or-contact test. The statute asks for source-identifying information.

LinkedIn's three authorities are Superior Court demurrer orders on thinner pleadings. *Palacios* faulted a complaint pleading only the plaintiff's own IP address. *Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671 (Cal. Super. Ct. 2025), and *Heiting v. HP* rejected trap-and-trace theories pleading "no allegation" of monitoring "who else contacts Plaintiff." *Heiting*, 2025 WL 2993673, at *3. Those orders reached only static, first-party IP allegations, not the device-side fingerprinting "process" pleaded here, which records the dialing, routing, addressing, and signaling information of Ganan's own communications. Compl. ¶¶ 228-37, 241-43. Section 638.51 independently bars installing or using a *pen register*, and that outgoing theory — which those demurrer orders never reach — is sufficient on its own to sustain the claim.

The motion to dismiss the section 638.50 and 638.51 claim should be denied.

**H. Plaintiff States a Claim Under the Federal Wiretap Act (18 U.S.C. §§ 2511, 2520).**

The Complaint pleads four Wiretap Act theories: interception of the contents of Ganan's live-session communications, procurement of and endeavoring toward that interception, intentional use and disclosure of intercepted contents, and service-provider divulgence of contents in transmission under § 2511(3)(a). Compl. ¶¶ 161-182. LinkedIn's response is one derivative paragraph: the claim fails "for the reasons" its § 631 argument fails. Mot. § IV.G. That paragraph cannot dismiss this claim.[22]

First, it is an incomplete attack because it does not challenge all ECPA theories alleged: dismissal is proper only where the complaint lacks "a cognizable legal theory" or sufficient facts under one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A motion that leaves a pleaded theory unanswered cannot dismiss the claim that theory supports.[23]

---

[22] To the extent LinkedIn's briefing gestures at a party-to-the-communication defense, it does not invoke 18 U.S.C. § 2511(2)(d), and the Court need not decide an unraised defense. LinkedIn moved only on a derivative CIPA premise and a contents/timing argument; that limited attack reaches neither § 2511(3)(a)'s divulgence prohibition — which carries no interception element — nor the use-and-disclosure, procurement, and endeavor theories the Complaint separately pleads. Compl. ¶¶ 159-183.

[23] *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (Rule 12(b)(6) "doesn't permit piecemeal dismissals of parts of claims").

LinkedIn's borrowed not-contents, not-in-transit premise answers only the § 2511(1)(a) interception theory. The motion never mentions § 2511(3)(a)'s divulgence prohibition, which has no interception element, Compl. ¶ 162, nor the use-and-disclosure prongs, Compl. ¶ 181, nor the procurement and endeavor allegations. Compl. ¶¶ 174, 178. *Brodsky*'s CIPA-ECPA equivalence cannot fill the gap.[24] Moreover, because LinkedIn does not separately address the route-specific elements of procurement, endeavor, use, disclosure, or provider-divulgence under § 2511(3)(a), the Court has no basis to dismiss Count I on grounds LinkedIn did not raise. Compl. ¶¶ 159-83..

Second, on the one theory the motion does reach, LinkedIn cannot show that the pleaded page-context arrays are non-content as a matter of law. The specific page-context fields LinkedIn duplicated, content-category, keyword, and behavior arrays, "relayed what Plaintiff and class members were doing, viewing, and/or requesting." Compl. ¶¶ 168-170. *Zynga* held only that bare referrer-header URLs were not contents where they failed to reveal user intent or behavior, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014), and did not address fields pleaded to convey the substance of what a user viewed and did. LinkedIn's own contrast case marks the line: *Goldstein v. Rumble Inc.*, 2026 WL 1406766, at *4 (C.D. Cal. 2026), found contents adequately pleaded where a URL disclosed "the descriptive title of the exact video viewed," the same descriptive work the pleaded arrays do. LinkedIn fails to carry its burden to challenge the content-bearing allegations.

## IV. CONCLUSION

For the foregoing reasons, the motion should be denied in its entirety. If the Court dismisses any claim, Plaintiff requests leave to amend, or as appropriate for jurisdictional discovery.

Respectfully submitted,

J.R. HOWELL,
LAW OFFICE OF J.R. HOWELL

Date:   July 14, 2026

By:   _/s/ J.R. Howell_
J.R. Howell (State Bar No. 268086)
*Attorney for Plaintiff, Jeff Ganan and the Proposed Classes*

---

[24] *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020), equates only the interception analyses.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on July 14, 2026. I further certify that Counsel for Defendant, LinkedIn Corporation, are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on July 14, 2026.

*/s/ J.R. Howell*
J.R. Howell (Cal. Bar No. 268086)
