J.R. HOWELL (State Bar No. 268086)
jr@lojrh.com
LAW OFFICE OF J.R. HOWELL
2219 Main Street
Suite 436
Santa Monica, CA 90405
Tel: (323) 897-8656

ATTORNEY FOR PLAINTIFF,
JEFF GANAN AND THE PROPOSED CLASSES

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF GANAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 3:26-cv-02968-VC<br><br>**PLAINTIFF JEFF GANAN'S OPPOSITION TO DEFENDANT'S REQUEST FOR INCORPORATION BY REFERENCE AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date: September 3, 2026<br>Time: 10:00 a.m.<br>Location: 17th Floor, Courtroom 3<br>Judge: Honorable Vincent Chhabria<br>Trial Date: Not Yet Set<br>Date Action Filed: April 6, 2026 |

Pl. Ganan's Opp. Def. RJN
3:26-cv-02968-VC

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................1

II. LEGAL STANDARD.....................................................................................................2

III. ARGUMENT ................................................................................................................3

    A.  Nothing Is Incorporated by Reference, Because Ganan's Complaint Does Not Rely on Any Proffered Document. ...............................................................................................3

    B.  The Web Captures and the Foreign Judgment (Exhibits 1, 5–9) Are Not Noticeable for the Truth of Their Contents. ..............................................................................................4

    C.  The Policy Exhibits (Exhibits 2–4) May Be Noticed Only for Existence and Text, Not for Interpretation, Historical Applicability, or Assent........................................................7

    D.  The Seymour Declaration and the DPA Cannot Resolve Disputed Facts.......................10

    E.  Even If Considered, None of the Proffered Material May Be Taken as True.................12

IV. CONCLUSION

# TABLE OF AUTHORITIES

**Cases**

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc)................................................6

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) .................................2, 3, 12, 13

*Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920 (9th Cir. 1987) .....................................8

*Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075 (E.D. Cal. 2019)....................6

*Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525
    (9th Cir. 1991)................................................................................8, 10

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010)..........................................2, 3, 4

*Doe I v. Google LLC*, No. 3:23-cv-02431-VC (N.D. Cal. June 6, 2025) .................................9

*Douglas v. U.S. Dist. Court ex rel. Talk Am., Inc.*, 495 F.3d 1062 (9th Cir. 2007) ...................9

*Dutch Girl Plaza LLC v. Marathon Petroleum Corp.*, No. 4:25-cv-01390-JST
    (N.D. Cal. Oct. 6, 2025)........................................................................3

*Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011 (C.D. Cal. 2015)..................8

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021)..................................9

*Hilton v. Guyot*, 159 U.S. 113 (1895) ..............................................................7

*In re Meta Android Privacy Litig.*, 2026 WL 1279416 (N.D. Cal. 2026)..................................9

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)................................2, 4, 10, 13

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)..........................................1, 2, 6, 8

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ...............................................1, 2, 3, 10, 13

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) .....................................8

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) ...................8

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-00824-JST (N.D. Cal. July 18, 2025)..................9

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)......................................2, 10

*Strong v. Valdez Fine Foods*, 724 F.3d 1042 (9th Cir. 2013) ........................................8, 10

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ...........................................................7

*United States v. Black*, 482 F.3d 1035 (9th Cir. 2007)..............................................6

*United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010) ..............................................11

*United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970) .............................................8

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003).............................................1, 2, 3, 4

*United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007) ..............................................7

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) .............5, 6

*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)...................................................6

**Rules**

Civil Local Rule 7-3(a) ........................................................................................................10

Fed. R. Civ. P. 56(c)(4) ......................................................................................................10

Fed. R. Evid. 106 .............................................................................................................9, 11

Fed. R. Evid. 201 ........................................................................1, 2, 4, 5, 6, 7, 8, 10

Fed. R. Evid. 401–403 .......................................................................................5, 6, 7

Fed. R. Evid. 602 ...........................................................................................................10, 11

Fed. R. Evid. 701 .................................................................................................................11

Fed. R. Evid. 801(c) .......................................................................................................5, 7, 11

Fed. R. Evid. 801(d)(2)(D) .................................................................................................11

Fed. R. Evid. 802 .........................................................................................................5, 7, 11

Fed. R. Evid. 803(6) ............................................................................................................11

Fed. R. Evid. 805 ..............................................................................................................6, 7

Fed. R. Evid. 901(a) ......................................................................................................5, 8, 11

Fed. R. Evid. 902(11) ..........................................................................................................11

**PLAINTIFF'S OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S REQUEST FOR INCORPORATION BY REFERENCE AND/OR JUDICIAL NOTICE**

## I. INTRODUCTION

LinkedIn Corporation's Request should be denied, and the extrinsic materials it proffers should be excluded or strictly limited. The Request asks the Court to treat nine attorney-downloaded exhibits, an advocacy website, LinkedIn's own policy pages, two non-party marketing pages, two Chrome Web Store listings, and a translated German preliminary ruling, as if they were part of Jeff Ganan's Complaint or as if their contents were indisputably true. Neither doctrine LinkedIn invokes permits that use and the Federal Rules of Evidence independently bar it.

Every exhibit must clear three independent gates, and none clears all three. First, incorporation by reference reaches only documents the Complaint "refers extensively to" or that "form[] the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Ganan's Complaint never cites, quotes, attaches, or relies on six of the nine exhibits or the DPA, and it names no version of the policies it describes only in substance, so nothing is incorporated.

Second, judicial notice under Rule 201 reaches only facts "not subject to reasonable dispute," Fed. R. Evid. 201(b), and at most the existence and text of a document, never the truth of contested assertions within it. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

Third, the ordinary rules of evidence, namely authentication, hearsay, completeness, relevance, apply to the extrinsic showing LinkedIn makes on its factual Rule 12(b)(1) attack, which must rest on "competent proof." *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). The Seymour Declaration and its Exhibit A, the LinkedIn–HUMAN Data Processing Agreement ("DPA"), fail that standard on their face.

The Request also refutes itself. LinkedIn quotes BrowserGate's technical claims for their truth, Mot. § II.A n.7, while branding the same site "propaganda," Mot. § I at 1–3, and "wild speculation," Mot. § III.A at 7–10. A source cannot be reliable enough to notice under Rule 201(b) and false at the same time. And the motion's flat assertion that HUMAN "can only use the data sent from LinkedIn for the purpose of distinguishing bot traffic," Mot. § III.A at 7–10, is

Pl. Ganan's Opp. to Def. RJN                    1
3:26-cv-02968-VC

contradicted by the DPA LinkedIn itself filed, which expressly permits HUMAN to use LinkedIn Personal Data "for its internal use to improve the quality of the services provided by Supplier." DPA § 4.1. A proffer that contradicts the brief it supports cannot carry a Rule 12 motion. The Request should be denied.

## II. LEGAL STANDARD

The Ninth Circuit polices both doctrines precisely because defendants abuse them at the pleading stage. "[T]he incorporation-by-reference doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Unrestrained use of these doctrines lets defendants "insert their own version of events into the complaint to defeat otherwise cognizable claims," *id.* at 1002, and "risks premature dismissals of plausible claims that may turn out to be valid after discovery," *id.* at 998.

Three limits govern. First, a document may be incorporated only "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 907–08. "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). And "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

Second, judicial notice is confined to adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. A court notices another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion." *Lee*, 250 F.3d at 690. Notice of a document's existence is not notice of its truth.

Third, extrinsic evidence offered on a factual Rule 12(b)(1) attack must satisfy the same evidentiary standard that governs at summary judgment, *Leite*, 749 F.3d at 1121–22 & n.3, and where the jurisdictional facts are intertwined with the merits, the Court "must leave the resolution of material factual disputes to the trier of fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143–44 (9th Cir. 2024); *accord Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

2004). LinkedIn brings "both attacks," Mot. § III at 7–10, and deploys the same exhibits against standing and the merits alike, consent, disclosure scope, collection, and HUMAN's conduct are all elements of Ganan's claims. Under *Leite* and *Bowen*, those disputes cannot be resolved on this motion through any doctrine. Each gate is addressed in turn below, and the Request fails at every one.

## III. ARGUMENT

### A. Nothing Is Incorporated by Reference, Because Ganan's Complaint Does Not Rely on Any Proffered Document.

Incorporation fails across the board for one dispositive reason: the Ganan Complaint never cites, quotes, attaches, or bases any claim on Exhibit 1 (browsergate.eu), Exhibit 5 (teamfluence.com), Exhibit 6 (fairlinked.eu), Exhibit 7 (PordaAI), Exhibit 8 (Anti-Woke Tag), Exhibit 9 (the German ruling), or the DPA. Only the policy exhibits (Exhibits 2–4) are even arguably referenced, and only "in substance," with no version named. Compl. ¶¶ 18–19, 83–90, 115–25. The inquiry turns on what the complaint does with a document, not on what a defendant believes the pleading resembles. *Ritchie*, 342 F.3d at 907–08.

LinkedIn's theory for Exhibit 1 is resemblance, not reliance. The motion asserts that Ganan's complaint "essentially copies the BrowserGate website," Mot. § I at 1–3, and that his allegations "effectively mirror the BrowserGate website," Mot. § II.D at 4–7. Mirroring is not the test. LinkedIn's own brief supplies the contrast: it is Farrell who "unabashedly rests nearly his entire complaint on the BrowserGate 'investigation.'" Mot. § II.C at 4–7. As to Ganan, LinkedIn does not, because it cannot, identify a single Complaint citation to the site.[1] Ganan's code-level allegations rest on his own investigation, pleaded by bundle, module, execution mode, function, parameter, and endpoint. Compl. ¶¶ 33–62. Even a sparse mention would not incorporate a document. *Coto*, 593 F.3d at 1038; *see Dutch Girl Plaza LLC v. Marathon Petroleum Corp.*, No. 4:25-cv-01390-JST, Dkt. 38 (N.D. Cal. Oct. 6, 2025) (holding a complaint's brief reference

---

[1] The Chrome Web Store exhibits share the mismatch. The religious- and political-extension allegation LinkedIn answers with Exhibits 7 and 8 is Farrell's. Mot. § III.B n.8 (citing Farrell Compl. ¶ 22). Arguments directed at Farrell's pleading do not support incorporation into, or dismissal of, Ganan's.

Pl. Ganan's Opp. to Def. RJN
3:26-cv-02968-VC

3

insufficient to incorporate the underlying document). Total silence certainly does not. Nor do counsel's litigation relationships: LinkedIn's observation that Ganan's counsel "also represents the group behind BrowserGate," Mot. § II.D at 4–7, is not a pleading allegation and cannot write a website into the Complaint.

The remaining exhibits are further afield. The Complaint never mentions Teamfluence, FairLinked, either Chrome Web Store listing, or the German proceeding. A non-party's marketing page, a non-party's advocacy page, store listings for products the plaintiff never references, and a foreign ruling between different parties cannot "form the basis" of a complaint that never refers to them. *Ritchie*, 342 F.3d at 907–08.

The policy exhibits fare no better under this gate. LinkedIn offers Exhibits 2 through 4 to supply a consent defense. Mot. § IV.A at 11–14. A document that "merely creates a defense to the well-pled allegations in the complaint" is not claim-forming. *Khoja*, 899 F.3d at 1002. The Complaint's consent allegations are averments about the scope of whatever disclosures LinkedIn may contend it provided, naming no version. Compl. ¶¶ 18–19, 83–90, 115–25. That is the "mere mention" *Coto* holds insufficient, and incorporation cannot pull in a defendant-selected version the plaintiff never identified. The DPA is not even nominated: LinkedIn does not run it through the Request at all, and alleging concealed third-party data channels does not incorporate a private vendor contract the Complaint never saw. *Ritchie*, 342 F.3d at 907–08. Because no proffered document is extensively referenced or claim-forming, incorporation by reference should be denied outright as to every exhibit.

## B. The Web Captures and the Foreign Judgment (Exhibits 1, 5–9) Are Not Noticeable for the Truth of Their Contents.

Rule 201 does not reach any of these exhibits for the purposes LinkedIn assigns them. The web captures fail for three reasons. First, they are advocacy and marketing pages, not sources "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Second, LinkedIn offers them for the truth of their contents, which *Khoja* forbids. Third, they fail the ordinary rules of evidence, authentication, hearsay, and relevance, that judicial notice does not suspend.

***Exhibit 1 (BrowserGate)***. An advocacy campaign is the antithesis of Rule 201(b) material, and LinkedIn's own filings concede the dispute. The motion quotes BrowserGate's technical assertion that Chrome extensions "can expose internal files to web pages through the web_accessible_resources field," Mot. § II.A n.7 (quoting Ex. 1 at 8), for its truth, while calling the same site "propaganda," Mot. § I at 1–3, a "fake privacy controversy," Mot. § I at 1–3, and "wild speculation," Mot. § III.A at 7–10. A party that brands a source false has conceded the source is "subject to reasonable dispute," and that concession ends the Rule 201(b) inquiry. LinkedIn cannot vouch for the site's technical claims in one footnote and disclaim the site as a fabrication in the next section. The proffer also fails the evidence rules: the Peelish Declaration authenticates only a June 29, 2026 download of a dynamic advocacy site, not the page as it existed at any operative time, and every substantive statement on the site is an out-of-court assertion that is hearsay when offered for its truth. Fed. R. Evid. 901(a), 801(c), 802.[2]

***Exhibits 5 and 6 (Teamfluence and FairLinked)***. These captures serve no purpose but narrative smear, and Rule 403 bars them. LinkedIn offers the Teamfluence page to prove that Teamfluence "traffics in scraping" and markets a plug-in to "[i]dentify 100% of your LinkedIn traffic," Mot. § I & n.1 (Ex. 5 at 2), and the FairLinked page to prove that a "shadowy entity" hosts BrowserGate and that Teamfluence's founder "sits on Fairlinked's board." Mot. § I & n.3. Each use is truth-use of third-party marketing copy and contested organizational facts, hearsay without exception, from undated captures of dynamic non-party sites. Fed. R. Evid. 801(c), 802, 901(a). More fundamentally, what a non-party sells, and why its founder might dislike LinkedIn, says nothing about what LinkedIn's code did to Ganan's browser in California. Compl. ¶¶ 33–62. The exhibits' only function is a three-step guilt-by-association inference from Teamfluence through FairLinked through counsel to Ganan with no probative value on any element and maximal unfair

---

[2] The motion's related unexhibited hearsay should be disregarded. LinkedIn quotes a Cybernews article calling BrowserGate "a 'nothingburger,'" Mot. § I & n.5 — a news article, not proffered as an exhibit, quoted for the truth of an unnamed commentator's opinion on the ultimate merits. That is double hearsay, unauthenticated, and improper argument by citation. Fed. R. Evid. 801(c), 805. The same is true of LinkedIn's own press statement quoted for its truth. Mot. § I at 1–3. News publications are noticeable, at most, for "what was in the public realm at the time." *Von Saher*, 592 F.3d at 960.

Pl. Ganan's Opp. to Def. RJN                          5
3:26-cv-02968-VC

prejudice. Fed. R. Evid. 401–403. Publications may be noticed, at most, to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

*Exhibits 7 and 8 (Chrome Web Store listings)*. Developer-written store descriptions are third-party marketing copy on dynamic commercial pages, noticeable at most for the fact that the listings displayed certain text. Existence of a listing is not truth of what the extension does, how it functions, or whether LinkedIn detects it. *Lee*, 250 F.3d at 689–90. Ganan does not object to the Court seeing what these listings say, because their text defeats the argument they are offered to support. LinkedIn cites them to show that extension detection "fails to establish anything private about" a user. Mot. § III.B n.8. But the listings LinkedIn selected describe a "Haram Remover Islamic Ai filter for Muslims" that blurs "haram" content, Peelish Decl. Ex. 7, and a tool announcing that "Wokeness is a fixation on class, gender, and race," Ex. 8. Detection of either supports an inference of religious practice or political orientation, the protected categories the Complaint pleads. Compl. ¶¶ 81, 93–94. Noticed for what they say, Exhibits 7 and 8 are a reason to deny the motion, not to grant it.

*Exhibit 9 (the German ruling)*. The foreign judgment may be noticed, if at all, only for its existence and posture, but LinkedIn asks for far more. The motion quotes the ruling's findings as true: "[t]he 'Teamfluence' software violates [LinkedIn's User Agreement]," and LinkedIn's "suspending the Claimants' user accounts is objectively justified overall and not arbitrary." Mot. § I & n.2 (Ex. 9 at 23, 31). That use is forbidden three times over. First, "taking judicial notice of findings of fact from another case exceeds the limits of Rule 201." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc). Foreign court documents are noticed "for the fact of their filing, but not the truth of the matters asserted therein." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1089 n.6 (E.D. Cal. 2019). Even LinkedIn's own authority permits notice only of proceedings with "a direct relation to matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Second, the findings are hearsay within hearsay when offered for truth: the German court's out-of-court findings, the party and witness statements those findings recount, and

the translator's certification that the English matches the German each require a separate exception, and LinkedIn offers none. Fed. R. Evid. 801(c), 802, 805; *see United States v. Sine*, 493 F.3d 1021, 1032–34 (9th Cir. 2007) (judicial fact-findings offered for truth are hearsay). Third, the exhibit is irrelevant to this case: a €25,000 summary preliminary-injunction proceeding brought by Teamfluence OÜ against LinkedIn Ireland and LinkedIn Germany, no party to this action on either side, now on appeal, says nothing about whether LinkedIn Corporation's code unlawfully interrogated Ganan's browser in California. Fed. R. Evid. 401–403. No preclusion theory is even colorable.[3]

LinkedIn's own Request concedes the limit: it claims indisputability only "as to [the judgment's] authenticity." RJN at 9–10 & n.1. An admission that only authenticity is indisputable is an admission that the findings are disputable, and Rule 201(b) reaches no further. Ganan does not oppose notice of three narrow facts, that the German proceeding occurred, that a preliminary ruling issued on March 11, 2026, and that an appeal is pending. Everything else about Exhibit 9 must be excluded. Notice should therefore be denied outright as to Exhibits 1, 5, and 6, confined to the displayed text of Exhibits 7 and 8, and confined to existence and posture as to Exhibit 9.

## C. The Policy Exhibits (Exhibits 2–4) May Be Noticed Only for Existence and Text, Not for Interpretation, Historical Applicability, or Assent.

Ganan does not dispute that the Court may consider the text of Exhibits 2 through 4 as the text of webpages counsel downloaded on June 29, 2026. That bounded concession is where the Request's legitimate reach ends. LinkedIn claims far more: that these captures are the operative User Agreement, Privacy Policy, and Cookie Policy that governed Ganan during the relevant period and supplied his consent to the challenged conduct. Mot. § IV.A at 11–14. For that claim

---

[3] The parties, claims, legal system, and posture all differ, and no recognition proceeding has occurred. *See Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895) (foreign judgments operate here only through comity); *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (no nonparty preclusion). And if the Court opens Exhibit 9 at all, it cuts against LinkedIn: LinkedIn reportedly represented to the German court that its account restrictions were not based on any knowledge of users' installed plugins or extensions a representation irreconcilable with the extension detection its own declarant describes. Seymour Decl. ¶¶ 8, 10–11. Ganan does not offer the ruling's statements for their truth; the point is that Exhibit 9 recognizes the very disputes — e.g., that cache accessibility does not entail consent to "permanent storage and data processing," Ex. 9 at 27 — that prevent LinkedIn from using it as an undisputed record.

there is no foundation, no noticeable fact, and no admissible proof. The gap between the concession and the claim has four parts.

First, the authentication matches only the narrow claim. Rule 901(a) requires evidence "sufficient to support a finding that the item is what the proponent claims it is," and the inquiry is therefore claim-dependent. Peelish is LinkedIn's counsel, not a records custodian. She can attest that each exhibit is "a true and correct copy of the publicly available webpage" she "downloaded on June 29, 2026." Peelish Decl. ¶¶ 4–6. She does not attest to LinkedIn's publication systems, version histories, clickwrap or browsewrap flows, change logs, or Ganan's account history, and nothing in her declaration shows she could. The foundation for a writing is laid by a witness with personal knowledge through whom the exhibit could be admitted, and a showing resting on information and belief is inadequate.[4] The line the Court can hold: these exhibits are authenticated as June 2026 captures, not as historically operative consent documents that Ganan received.

Second, the self-recited effective dates are not self-proving. Exhibits 2 and 3 recite a November 3, 2025 effective date, and Exhibit 4 recites June 3, 2022. A date printed on a party's own webpage, offered to establish a dispositive consent defense, is a disputed fact, the opposite of Rule 201(b) material. *Lee*, 250 F.3d at 689–90. Courts are particularly "skeptic[al] as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation." *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1028–30 (C.D. Cal. 2015). LinkedIn cannot bootstrap the historical effectiveness of its policy from the fact that the policy says so.

---

[4] *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773–74 (9th Cir. 2002) (authentication is a condition precedent to admissibility); *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) (foundation laid by a witness with personal knowledge attesting to identity and execution); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) (declarant must be "a person through whom the exhibits could be admitted into evidence"); *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (citing *Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991)) (showings resting on information and belief are inadequate); *see infra* § III.D. A capture declaration proves, at its ceiling, that the pages are what counsel printed on a given date — and even that showing was accepted under "a reduced evidentiary standard in preliminary injunction motions." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1153–54 (C.D. Cal. 2002).

Third, LinkedIn's own policy text defeats the temporal use. The User Agreement's and Privacy Policy's change provisions are not retroactive and tie consent to use after publication or notice of updated terms. Exs. 2–3. A June 2026 capture reciting a November 3, 2025 effective date cannot authorize earlier conduct, and the alleged collection period reaches earlier conduct. Compl. ¶¶ 34, 36. "[A] party can't unilaterally change the terms of a contract," and assent from continued use "can only be inferred after he received proper notice of the proposed changes." *Douglas v. U.S. Dist. Court ex rel. Talk Am., Inc.*, 495 F.3d 1062, 1066–67 (9th Cir. 2007) (per curiam). LinkedIn offers no evidence that Ganan received notice of these versions, continued use after notice, or was governed by them when the challenged code ran. The Cookie Policy is weaker still: its June 3, 2022 face date sits beside its own statement that cookie names and technologies "may change over time," and it references an external Cookie Table LinkedIn never produced. If LinkedIn relies on the Cookie Policy to define its disclosures, fairness requires the Table in effect at the relevant times. Fed. R. Evid. 106.[5]

Fourth, interpretation and assent are fact questions no notice can resolve. This Court has held that "consent is a factual issue that cannot be resolved on the pleadings." *Doe I v. Google LLC*, No. 3:23-cv-02431-VC, Dkt. 198 at 6 (N.D. Cal. June 6, 2025). "[T]he mere existence of a privacy policy is not dispositive because users might lack actual or constructive notice of the policy." *Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-00824-JST, Dkt. 60 (N.D. Cal. July 18, 2025) (quoting *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D. Cal. 2021)). And even where policy text is properly before the court, "a reasonable user could plausibly read the Privacy Policy to not disclose" the challenged practice. *In re Meta Android Privacy Litig.*, No. 3:25-cv-04674-RFL, 2026 WL 1279416, at *9 (N.D. Cal. May 11, 2026). The Complaint alleges that generalized references to browser data, add-ons, cookies, security, and vendors did not disclose active interrogation, covert extension-resource probing, DOM scanning, fingerprint

---

[5] Rule 106, as amended effective December 1, 2023, provides that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time," and "may do so over a hearsay objection." Fed. R. Evid. 106. The rule reaches both the missing Cookie Table and the DPA's missing purchase-ordering documents. *See infra* § III.D.

propagation, or hidden HUMAN routing. Compl. ¶¶ 83–90, 115–25. Whether a reasonable user could read the policies that way is a merits dispute, and using noticed text to override the Complaint's scope allegations is exactly the abuse *Khoja* condemns. 899 F.3d at 1002–03.

The concession, then, is precise: the Court may consider the text of the June 29, 2026 captures as text. It may not treat the recited effective dates as historically accurate, treat the captures as the versions operative during the relevant period, treat them as proof that Ganan saw, received notice of, or assented to them, or adopt LinkedIn's interpretation of what they disclosed. Within those limits notice is unobjectionable. Beyond them it must be denied.

### D. The Seymour Declaration and the DPA Cannot Resolve Disputed Facts.

The Seymour Declaration and the DPA travel outside the Request entirely, and they are properly considered, if at all, only as extrinsic evidence on a genuine factual Rule 12(b)(1) attack. No one contends a party declaration is judicially noticeable, and a private vendor contract is categorically outside Rule 201, not generally known, not from an unquestionable source, and its terms and compliance are the disputed issues. Fed. R. Evid. 201(b). Yet LinkedIn deploys both documents in its merits arguments, quoting the DPA for its CIPA defense, Mot. § IV.F at 20–24, and citing Seymour throughout its facial-standing and Rule 12(b)(6) sections, Mot. § III.B n.8. The Court should confine extrinsic evidence to the factual attack: it may not be considered on the facial attack or the 12(b)(6) grounds at all. *Safe Air*, 373 F.3d at 1039. Within that setting, the proffer fails for four reasons, and Ganan states these objections in this opposition per Civil Local Rule 7-3(a), asking the Court to disregard or give no weight to the challenged matter.

First, the declaration's key attestations are hedged past the point of competence. A factual attack must rest on "competent proof" measured by the summary-judgment standard, *Leite*, 749 F.3d at 1121–22 & n.3, which requires personal knowledge. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602. Seymour, a Trust and Safety investigator nowhere shown to be a signatory, negotiator, or records custodian, attests that he "understand[s] that Exhibit A attached to this Declaration is a true and correct copy" of the DPA. Seymour Decl. ¶ 24. "I understand" is information-and-belief phrasing, the kind of showing treated as inadequate when a declaration is "not based on personal knowledge, but on information and belief." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th

Cir. 2013) (citing *Columbia Pictures Indus. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991)). His compliance opinion is weaker: "I have no reason to believe HUMAN Security has violated those contractual terms." Seymour Decl. ¶ 24. A statement of the declarant's present unawareness is not evidence of HUMAN's actual retention, use, or disclosure. Seymour lays no foundation of visibility into HUMAN's systems, subprocessors, or downstream uses, so the opinion fails Rules 602 and 701. The same defect infects ¶ 20 ("[b]ased on my investigation") and ¶ 23 ("sole purpose") insofar as they describe what HUMAN does.

Second, the DPA is incomplete on its own face. LinkedIn claims Exhibit A is the operative agreement defining HUMAN's processing, but the DPA's integration clause states that the governing "Agreement" includes "the master agreement terms, the relevant [Statement] of Work (SOW), Order Form, or other purchase ordering document," and § 1 states that the processing operations and LinkedIn's instructions "will be described in each purchase ordering document." DPA § 1 (Nature of Data Processing). None of those documents is in the record. The exhibit therefore is not what LinkedIn claims it is, Fed. R. Evid. 901(a), and if LinkedIn relies on the DPA to define the relationship, fairness requires the missing incorporated documents. Fed. R. Evid. 106. Ganan does not dispute that Exhibit A appears to be a genuine LinkedIn–HUMAN DPA document, but the dispute is completeness and operative status, which the exhibit's own text concedes.

Third, the DPA's Schedule C is hearsay when offered for compliance. The certification that HUMAN "does not receive LinkedIn Personal Data as consideration for any services and does not otherwise derive value from the processing or use of LinkedIn Personal Data, other than the value derived as a result of Supplier's direct business relationship with LinkedIn Corporation," Seymour Ex. A, Schedule C, is HUMAN's out-of-court statement, signed by HUMAN's CFO — a certification whose own "other than" clause concedes HUMAN derives value from the relationship. Offered by LinkedIn to prove those facts, it is hearsay without an exception. Fed. R. Evid. 801(c), 802. Rule 801(d)(2)(D) is unavailable because control is the essential ingredient of agency and independent contractors are not ordinarily agents, *United States v. Bonds*, 608 F.3d 495, 505–06 (9th Cir. 2010), and no business-record foundation was attempted. Fed. R. Evid. 803(6), 902(11). A contractual promise is not evidence of performance in any event, a gap

LinkedIn's own motion concedes: "To the extent HUMAN may have used data beyond that contracted mandate, such conduct would be prohibited by contract and unknown to LinkedIn." Mot. § IV.F at 20–24. A party that admits it would not know cannot offer affirmative proof of what its vendor did.

Fourth, even a fully competent declaration could not carry this motion, because the proffer contradicts itself and the facts it addresses are merits elements. The motion asserts HUMAN "can only use the data sent from LinkedIn for the purpose of distinguishing bot traffic from genuine human traffic," Mot. § III.A at 7–10, and Seymour swears the data is "processed for the sole purpose of distinguishing automated bot traffic," Seymour Decl. ¶ 23. The DPA both filed says otherwise: HUMAN "may use the Personal Data … for its internal use to improve the quality of the services provided by Supplier." DPA § 4.1. The motion calls the transmission "basic data," Mot. § III.A at 7–10, while the DPA defines everything it governs as "Personal Data" — information that "can be used to identify, contact or locate a specific individual." DPA (defining "Personal Data"). Seymour denies member-linked "collections of information," Seymour Decl. ¶ 18, in the paragraph immediately before he describes member-keyed lookups: "a customer support representative may seek to determine whether the member has browser extensions installed" from events "stored for up to two years." Id. ¶ 19. And Schedule D's checked boxes show HUMAN processing member "User Activity Data (Purchase History, Page Views, Profile Views, Ad Interactions)." Seymour Ex. A, Schedule D.

On a factual attack these contradictions are dispositive: "genuine disputes of material fact render dismissal on standing grounds improper," *Bowen*, 118 F.4th at 1143–44, and what LinkedIn collected, whether it was linked to identities, and what HUMAN received and did are elements of the CIPA, ECPA, CDAFA, and privacy claims. The Court "must leave the resolution of material factual disputes to the trier of fact." *Id.* A declaration this narrow, hedged, and internally contradicted at most creates a dispute. It cannot resolve one. If the Court concludes the jurisdictional facts genuinely need development, the remedy is limited jurisdictional discovery, not dismissal on this record.

**E. Even If Considered, None of the Proffered Material May Be Taken as True.**

Whatever survives the three gates arrives subject to *Khoja*'s truth limits, and those limits leave every material dispute in place. "[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. So even if the Court looks at every exhibit, the captures prove only that pages displayed text on June 29, 2026. The policies prove only their own words, whose meaning and whose applicability to Ganan remain disputed. Exhibit 9 to the Peelish Declaration proves only that a foreign proceeding occurred. And the Seymour Declaration and DPA prove, at most, what LinkedIn's declarant says and what two companies purported to promise, but not what happened to Ganan's data. Nothing LinkedIn has proffered converts a single disputed fact into an undisputed one.

## IV. CONCLUSION

The Request should be denied, with the following precise dispositions. First, incorporation by reference should be denied as to all nine exhibits, because Ganan's Complaint does not rely on any of them. Second, judicial notice should be denied as to Exhibits 1, 5, 6, 7, and 8, except that the Court may note that the pages displayed the captured text on June 29, 2026, and denied as to Exhibit 9 except for the existence of the German proceeding, the issuance of a preliminary ruling, and the pending appeal. Third, Exhibits 2 through 4 may be noticed only for the existence and text of the June 29, 2026 captures, but not for the truth of their recited effective dates, their historical applicability, that they were furnished to Ganan, Ganan's notice or assent, or LinkedIn's interpretation of their scope. Fourth, the Court should disregard or give no weight to the Seymour Declaration's hedged attestation and compliance opinion and to Schedule C's certifications offered for compliance, should decline to treat the facially incomplete DPA as the operative definition of HUMAN's processing, and should confine all extrinsic evidence to the factual Rule 12(b)(1) attack — where, under *Leite* and *Bowen*, the intertwined disputes it raises must be left to the trier of fact. LinkedIn failed to meet its burden to argue, let alone prove, that any exhibit clears any gate for the uses it proposes. The Request should be denied.

Respectfully submitted,

J.R. HOWELL,
LAW OFFICE OF J.R. HOWELL

Date:   July 14, 2026                      By:   _/s/ J.R. Howell_____
                                                 J.R. Howell (State Bar No. 268086)
                                                 *Attorney for Plaintiff, Jeff Ganan and*
                                                 *the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on July 14, 2026. I further certify that Counsel for Defendant, LinkedIn Corporation, are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on July 14, 2026.


*/s/ J.R. Howell*
J.R. Howell (Cal. Bar No. 268086)