COOLEY LLP
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO SANTACANA (281668)
(esantacana@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
NATALIE PEELISH (*Appearance Pro Hac Vice*)
(npeelish@cooley.com)
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101-1355
Telephone: +1 206 452 8700
Facsimile: +1 206 452 8800

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS FARRELL, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

JEFF GANAN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Related Cases:
No. 3:26-cv-02953-VC
No. 3:26-cv-02968-VC

**DEFENDANT LINKEDIN CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS NICHOLAS FARRELL AND JEFF GANAN'S COMPLAINTS**

Date: September 3, 2026
Time: 10:00 a.m.
Location: Courtroom 3, 17th Floor
Judge: Honorable Vincent Chhabria

Date Action Filed: April 6, 2026

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. THE COMPLAINTS FAIL UNDER RULE 12(B)(1) ........ 2

A. As a matter of fact, Plaintiffs lack standing. ........ 2

1. Farrell conjures no dispute over his lack of Article III injury. ........ 4

2. Ganan's 38 exhibits make no material dispute of fact about his lack of injury. ........ 5

B. The complaints facially do not establish standing. ........ 8

1. Farrell does not allege any Article III injury. ........ 8

2. Ganan does not allege any Article III injury. ........ 9

III. THE COMPLAINTS FAIL UNDER RULE 12(B)(6) ........ 11

A. Plaintiffs' consent defeats all claims. ........ 11

1. Plaintiffs agreed to the User Agreement ........ 11

2. The User Agreement and incorporated policies disclose the alleged activity. ........ 12

B. Plaintiffs fail to state plausible invasion of privacy or intrusion upon seclusion claims. ........ 13

C. Plaintiffs fail to state CDAFA claims. ........ 15

1. Plaintiffs do not plausibly allege damage or loss. ........ 15

2. Plaintiffs do not plausibly allege unauthorized access. ........ 17

D. Farrell fails to state a right to publicity claim. ........ 17

E. Ganan fails to state CIPA or ECPA claims. ........ 18

IV. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**


*Barrales v. Reckitt Benckiser LLC*,
2026 WL 2212867 (N.D. Cal. 2026) ....................8

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ....................2

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. 2021) ....................18

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. 2023)....................5, 7

*Callahan v. Ancestry.com Inc.*,
2021 WL 783524 (N.D. Cal. 2021) ....................18

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................13

*Crano v. Sojern, Inc.*,
2026 WL 167036 (N.D. Cal. 2026) ....................10

*D.B. v. Bellesa Enters. US, Inc.*,
2026 WL 2058427 (C.D. Cal. 2026)....................13

*Del Salto v. Auction.com, LLC*,
2026 WL 2323527 (N.D. Cal. 2026) ....................8

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. 2026) ....................15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................18

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................18, 19

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ....................8

*eBay, Inc. v. Bidders Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ....................5

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....................9

*Exch. Nat'l. Bank of Chi. v. Touche Ross & Co.*,
544 F.2d 1126 (2d Cir. 1976)....................2

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................10, 11, 15, 18

*Found. Against Intolerance and Racism, Inc. v. Walker*,
2025 WL 1756875 (W.D. Wash. 2025)....................6

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. 2013) ....................16

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. 2013) ....................13

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................14

*Heiting v. HP Inc.*,
2025 WL 2993673 (Cal. Super. Ct. 2025)....................20

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
2024 WL 3738055 (C.D. Cal. 2024)....................19

*Heiting v. Taro Pharms., USA, Inc.*,
709 F. Supp. 3d 1012 (C.D. Cal. 2024) ....................19, 20

*Iten v. Los Angeles*,
81 F.4th 979 (9th Cir. 2023) ....................10

*Kisting-Leung v. Cigna Corp.*,
780 F. Supp. 3d 985 (E.D. Cal. 2025)....................8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................12

*Lazares v. Shopify (USA), Inc.*,
2025 WL 385512 (N.D. Cal. 2025) ....................5

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. 2025) ....................9, 16

*Love v. Ladder Financial, Inc.*,
2024 WL 2104497 (N.D. Cal. 2024) ....................19

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. 2023)....................19

*Merical v. The Joint Corp.*,
2026 WL 2225531 (E.D. Cal. 2026)....................18

*In re Meta Android Priv. Litig.*,
2026 WL 1279416 (N.D. Cal. 2026) ....................15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................13

*Pennsylvania v. New Jersey*,
426 U.S. 660 (1976)....................10

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. 2025) ....................11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................9, 10, 17

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. 2023) ....................16

*Ratner-Stauber v. City of Los Angeles*,
2026 WL 2001234 (C.D. Cal. 2026)....................2, 8

*Rodriguez v. Sparc Grp., LLC*,
2025 WL 2993671 (Cal. Super. Ct. 2025) ....................20

*Sarayli v. Huel, Ltd.*,
2026 WL 821091 (N.D. Cal. 2026) ....................2, 3

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. 2025) ....................14, 15, 16

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) ....................2

*Straight v. EdFinancial Servs., LLC*,
2026 WL 2087412 (N.D. Cal. 2026) ....................10

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. 2026) ....................15

*U.S. v. Borowy*,
595 F.3d 1045 (9th Cir. 2010) ....................6

*U.S. v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ....................20

*U.S. v. Hamilton*,
434 F. Supp. 2d 974 (D. Or. 2006) ....................6

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................20

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................18, 19

**Constitutions**

U.S. Const., art. III .................... *passim*

**Statutes**

California Civil Code § 3344 ....................18

California Comprehensive Computer Data Access and Fraud Act (CDAFA) .................... *passim*

California Invasion of Privacy Act (CIPA) ....................2, 5, 8, 18

California Penal Code § 631 ....................18, 19, 20

Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2511(3)(a) ....................2, 18, 19, 20

**Court Rules**

Federal Rule of Civil Procedure
12(b)(1) ....................2, 3
12(b)(6) ....................11
56....................2

## I. INTRODUCTION

Plaintiffs Nicholas Farrell and Jeff Ganan filed this litigation after a dubious website proclaimed that LinkedIn runs an international spying campaign. *See* Mot. 2 (describing "Browsergate").[1] LinkedIn's Motion explained that the website is spurious and that Plaintiffs' copy-paste complaints fail to allege the necessary elements of their various causes of action—indeed, neither Plaintiff even alleges having installed an extension for which LinkedIn searched. *Id.* at 9-10. Further, LinkedIn provided evidence—a sworn declaration from its Principal Trust & Safety Investigator and the relevant security vendor contract—that show none of the asserted injuries occurred. The data LinkedIn allegedly looks at is not private, nor would it reveal anything private about either Plaintiff (if they even have any installed extensions). And, LinkedIn transparently discloses that it and its vendors use such data to protect the platform and its users, not to generate revenue through advertising or any other allegedly harmful activity.

Neither Plaintiff comes close to disputing the sworn facts that LinkedIn put forth—details that *disprove* Plaintiffs' allegations. Indeed, despite Ganan's attaching a raft of irrelevant materials, neither Plaintiff submits anything to actually contest LinkedIn's evidence. Even after Plaintiff Farrell's initial interest and the Court's invitation, neither Plaintiff ultimately sought any jurisdictional discovery to try to rebut LinkedIn's evidence. They leave LinkedIn's sworn facts undisputed as a matter of law. Neither complaint can survive; on this record, each must be dismissed with prejudice for lack of Article III standing.

Nor do Plaintiffs' other responses resuscitate their pleading failures. Plaintiffs do not, even on the face of their complaints, allege any harm sufficient to confer Article III standing. Their arguments amount to rock-throwing; they cannot rescue Plaintiffs' consent to the challenged conduct. Even if Plaintiffs' allegations were true that they had a reasonable expectation of privacy in their browser extensions, that LinkedIn collected private information, and that LinkedIn shared this information with third parties, LinkedIn's terms, to which Plaintiffs agreed, entitled LinkedIn to do so. Moreover, Plaintiffs cannot claim an expectation of privacy in what was concededly

[1] LinkedIn identifies its filings by titles only, as they are identical in each case but their docket numbers vary. Plaintiffs' filings are noted by the relevant last name, except where obvious.

publicly exposed information. And their recitation of statutory elements—under California's right to publicity law, CDAFA, CIPA, and ECPA[2]—do not amount to plausible pleading.

## II. THE COMPLAINTS FAIL UNDER RULE 12(b)(1)

Plaintiffs attempt to stand on two fatally flawed theories of Article III injury-in-fact: that they suffered common law privacy harms, and that they suffered economic loss. Mot. 7-10. As explained in LinkedIn's Motion to Dismiss, neither theory has merit.

### A. As a matter of fact, Plaintiffs lack standing.

Both Plaintiffs recognize that when jurisdictional issues are "intertwined with an element of the merits of the plaintiff's claim[s]," the Court must treat the motion like one for summary judgment and "leave the resolution of material factual disputes," to the extent they exist, "to the trier of fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (internal citation omitted). "At summary judgment, a moving party that does not bear the ultimate burden of proof need not conclusively disprove the nonmoving party's case." *Ratner-Stauber v. City of Los Angeles*, 2026 WL 2001234, at *15 (C.D. Cal. 2026). The movant need only produce evidence "negating an essential element of the nonmoving party's claim" or "showing that the nonmoving party lacks evidence sufficient to carry its ultimate burden at trial." *Id.* If the movant "carrie[s] their initial burden, Plaintiff must identify particular materials in the record showing a genuine dispute of material fact." *Id.* at *16.

"[A]s under Rule 56, a party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist." *Exch. Nat'l. Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976), *subsequent history omitted*. Rather, it is "necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Sarayli v. Huel, Ltd.*, 2026 WL 821091, at *2 (N.D. Cal. 2026) (granting 12(b)(1) motion).

LinkedIn's sworn declaration remains uncontroverted after Plaintiffs failed to respond with

[2] Only Ganan pleads CIPA and ECPA claims; only Farrell invokes the right to publicity statute.

competent evidence. *See Sarayli*, 2026 WL 821091, at *2 ("Even a barebones declaration attached to a 12(b)(1) motion requires some kind of evidentiary response by the opposing party."). Crucially, the Court invited Plaintiffs to raise any need they may have for discovery in order to resolve the jurisdictional issues. June 25, 2026 Hr'g Tr. 9:14-10:16. Neither Farrell nor Ganan did so, opting instead to rely on their allegations and, in Ganan's case, 38 purportedly judicially noticeable exhibits that have nothing to do with LinkedIn's actual alleged conduct here. But this is an evidentiary motion; allegations and insinuations alone cannot generate a genuine dispute of fact. "Accordingly, the undisputed evidentiary record before the court permits only one conclusion"—that Plaintiffs suffered no harm. *Sarayli*, 2026 WL 821091, at *2.

LinkedIn established the following facts fatal to Plaintiffs' privacy and economic harms:

1. Users voluntarily choose to download browser extensions for "enhanced functionality" while browsing the web. To effectuate this functionality, browser extension developers include relevant information—including data identifying the extension—in "web_accessible_resources" folders designed to be accessible to website operators, like LinkedIn. Mot. 7-8; Seymour Decl. ¶¶ 10-14.

2. In detecting whether a user has a browser extension that may be associated with scraping, automation, or other prohibited activity, LinkedIn merely looks to the publicly-exposed "web_accessible_resources" file associated with the extension's ID. *Id.* LinkedIn also detects extensions based on the traces they leave behind in LinkedIn's DOM, without using extension IDs. *Id.* ¶ 15.

3. LinkedIn has not, and does not, link browser extension detection results to member profiles in order to use that information for any revenue-generating, marketing, or advertising purpose. Mot. 8; Seymour Decl. ¶¶ 17-18. Nor does LinkedIn create "profiles" or "dossiers" about LinkedIn members containing browser extension detection results. *Id.* ¶ 18.

4. LinkedIn does not share its browser extension detection results with any third party. Mot. 8-9; Seymour Decl. ¶¶ 20-23 & Ex. A at 20.

Plaintiffs do not respond to these statements with competent evidence of their own. Instead, they rely on the dubious allegations in the Browsergate website and (for Ganan) a series of webpages and generic academic articles that describe hypothetical risks without asserting *anything* about LinkedIn. But the record establishes that neither Plaintiff could have suffered a privacy injury or economic harm: LinkedIn has shown that the at-issue data is not private, that LinkedIn does not economically benefit from looking at it, and that LinkedIn did not disclose the results to any third party. Detecting when users violate LinkedIn's User Agreement by deploying browser add-ons or extensions is not an instance of LinkedIn invading or monetizing anything—indeed,

many of these extensions, including ones like Teamfluence, scrape LinkedIn for other users' data in ways that *can* cause harms. Seymour Decl. ¶¶ 3-5. Even seemingly innocuous extensions may tax LinkedIn in ways relevant to customer service and support, another reason why extension detection is necessary (and in no way unlawful). *Id.*

Plaintiffs claim without support that non-private browser extension information reveals private information. Ganan Opp. 5 n.5; Farrell Opp. 7. But they concede that the only browser extension information that comes from a user's browser is the extension ID number, *i.e.*, the identity of the *extension*, not some private characteristic about the user behind it. *See, e.g.*, Farrell Compl. ¶ 14; Ganan Compl. ¶¶ 36-47. Looking for and finding harmful extensions (or confirming the user hasn't installed one) cannot violate any reasonable expectation of privacy. And neither Plaintiff disputes that LinkedIn does this for security purposes; Ganan even alleges LinkedIn's "legitimate interest in protecting its platform." Ganan Compl. ¶ 6.

### 1. Farrell conjures no dispute over his lack of Article III injury.

***No privacy harm.*** Farrell submits nothing to contest his lack of privacy harm. *See* Opp. 3. Instead of seeking to carry his burden, Farrell rests on allegations derived from the dubious Browsergate website and a mantra about factual disputes going to a trier of fact. *Id.* 4-5. But this tactic overlooks the *plaintiff's own burden* to submit competent proof in order to create a genuine dispute of fact. Farrell opted not to submit any. *See id.* 2 n.2 (explaining failure to rebut economic injury argument because it "would require the submission of extrinsic evidence"). His only "facts" are hearsay: the spurious claims of a made-for-litigation website created by a developer whose own extension scraped LinkedIn data. *See* Mot. 2 (recounting the Teamfluence background). And even those claims stop short of establishing harm; they establish only what LinkedIn already concedes: that it does search for and detect harmful extensions in accordance with its Privacy Policy. This website fails to allege (nor could it) that LinkedIn actually does anything else with that information, instead asserting hypothetical concerns.[3]

LinkedIn's facts, on the other hand, are supported by a sworn declaration. This is real

[3] The site relies on "if" statements to insinuate injury. *See, e.g.*, Peelish Decl., Ex. 1 at 23 ("If Linked In detects one of the 509 job search extensions on the browser of someone whose profile says they currently work at Company X, Linked In knows that person is trying to leave.").

evidence, and it stands unrebutted. Farrell's failure to generate a material dispute of fact with respect to a privacy injury is dispositive. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *2 (C.D. Cal. 2023) (dismissing CIPA claims where Plaintiff failed to support conclusory allegations).

Desperate, Farrell pivots: suddenly, his standing derives from a trespass theory tucked into two paragraphs of his CDAFA claim. With no citation, he simply declares that "the common-law analogue to Plaintiff's CDAFA claim is trespass." Opp. 3. But his leading authority, a Clean Air Act case about toxic waste, is obviously distinguishable, and his other support concerned the sort of automated robotic scraping LinkedIn's system protects *against*. *See, e.g.*, *eBay, Inc. v. Bidders Edge, Inc.*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000) (finding trespass where web crawlers used proxy servers to evade eBay's protections against aggregation bots). LinkedIn does not trespass by examining the browsers that engage with its services.

The common-law injury Farrell actually alleges in the CDAFA context is misappropriation of data. *See* Mot. 19. And that is what Farrell pleads, describing "confidential and sensitive information" that he "did not intend to disclose to Defendant" and that was obtained without consent or compensation. Farrell Compl. ¶¶ 53-54. But the unrebutted evidence demonstrates that no confidential or sensitive data was obtained, and the Privacy Policy discloses that website add-ons *will* be detected by LinkedIn. *See supra*.

***No economic harm.*** Farrell chose not to carry his burden of submitting competent proof about the misappropriation theory of privacy harm—the only basis on which he could have suffered an economic injury. He cannot now rewrite the pleadings under the guise of a trespass theory he never pled. *See Lazares v. Shopify (USA), Inc.*, 2025 WL 385512, at *2 (N.D. Cal. 2025) ("Plaintiff may not amend the complaint through his opposition brief.").[4]

**2. Ganan's 38 exhibits make no material dispute of fact about his lack of injury.**

***No privacy harm.*** Ganan drowns the Court in papers that he claims demonstrate how a

[4] Farrell's insistence that LinkedIn somehow waived a challenge to his standing on CDAFA grounds is peculiar; the Motion to Dismiss states that "[n]either Plaintiff plausibly pleads that they 'suffer[ed] damage or loss,' as required to confer standing under the statute." Mot. 18.

privacy injury from extension detection is theoretically possible. But 38 exhibits of academic literature and extension developer pages—only three of which mention LinkedIn in passing unrelated to detecting browser extensions—cannot generate any material dispute of fact about whether LinkedIn looks at anything reasonably considered private about Ganan.[5] Ganan's exhibits (if they may even properly be noticed, which LinkedIn contests in concurrently filed briefing) do not contradict or even contest the Declaration's assertions that the information LinkedIn looks at is in the extension's publicly accessible web resources files. Indeed, some of these exhibits reaffirm that the relevant data is publicly accessible. *See* Howell Decl., Ex. B, ECF 34-3 at 1 ("Web-accessible resources are files inside an extension that can be accessed by web pages or other extensions."). There simply is not a reasonable expectation of privacy over what another person (in this case, a developer) makes publicly available. *See U.S. v. Borowy*, 595 F.3d 1045, 1048 (9th Cir. 2010) (finding that even "subjective intention not to share [one's] files d[oes] not create an objectively reasonable expectation of privacy in the face of [] widespread public access."); *U.S. v. Hamilton*, 434 F. Supp. 2d 974, 978-79 (D. Or. 2006) ("It is well-settled that a person does not have a constitutionally protected reasonable expectation of privacy in information conveyed or disclosed to a third party," in the context of employment records.).

The Spectroscopy / DOM-related allegations are no different—of course extensions that meddle with, alter, and scrape LinkedIn's features will leave traces that LinkedIn observes. *See* Seymour Decl. ¶ 15. At any rate, Ganan's exhibits do not rest on personal knowledge of a party or even a technical expert, meaning they are not competent proof and thus "are entitled to no weight at summary judgment." *Found. Against Intolerance and Racism, Inc. v. Walker*, 2025 WL 1756875, at *5 (W.D. Wash. 2025) (finding no standing where plaintiff's standing claims "are unsupported by the appropriate proof"). Ganan cannot dump computer science textbooks on the Court and expect that his interpretation of them (or the Court's own) is sufficient to create a dispute with admissible evidence.

In lieu of a defense, Ganan attacks LinkedIn's sworn declaration. Notably, he failed to do

[5] Ganan inappropriately weaves various merits arguments into his Request for Judicial Notice. The Court should ignore them as blatant attempts to circumvent the Court-ordered page limits.

so the right way because he declined to take *any* discovery into it. Instead, Ganan has decided he only wants discovery if the Court credits LinkedIn's declaration. Ganan Opp. 3. But that "heads, I win; tails, you lose" approach to discovery is pure gamesmanship that should be ignored, especially where the Court explicitly invited Ganan to seek discovery, and LinkedIn *offered* such discovery, yet Ganan did not respond.

Ganan raises meritless evidentiary objections that LinkedIn addresses in its Opposition to Ganan's Request for Judicial Notice. Ganan also cites a definition of personal data in the attached contract (Seymour Decl., Ex. A) as if it showed LinkedIn collected *his private data*. Ganan Opp. 3. This gets him nowhere; the contract at issue is between HUMAN and LinkedIn. It concerned restrictions on how HUMAN could use data, including that it could not use personal data commercially. *See* Seymour Decl., Ex. A at 20 (restricting HUMAN from deriving value from the at-issue data or using it other than as necessary to serve LinkedIn). The contract did not purport to define browser extension data, which is not shared with HUMAN, and the metadata that Plaintiffs allege was shared is not private, *see* Mot. 17. If Ganan had questions about the contracts or the statements in the Declaration, he should have accepted the Court's invitation to seek jurisdictional discovery.

***No economic harm.*** Ganan does not even attempt to rebut the facts demonstrating a lack of economic harm: that LinkedIn does not gather browser extension information for commercial purposes or that LinkedIn does not share any browser extension data with any third party. Seymour Decl. ¶¶ 16-19. Rather, it remains undisputed that the data vendors receive is the sort of metadata that identifies bot traffic, not sensitive private material about browser extensions that could be used in a commercial and identifying way. *Id.* ¶¶ 21-23; *see also infra* Sec. III.E.

Accordingly, as a factual matter, Ganan does not have standing to pursue his claims.

*****

This Court would not be the first to dismiss claims where a defendant showed them to be factually untethered to reality and the plaintiff failed to rebut that evidence with their own. *See Byars*, 2023 WL 2996686, at *2 (where plaintiff produced "neither a declaration nor any other evidence to support her conclusory allegation[s]", the court had "no evidence that [she] engaged

in any communication … much less that she disclosed private information or was injured by any conduct of Defendant."); *see also Barrales v. Reckitt Benckiser LLC*, 2026 WL 2212867, at *3 (N.D. Cal. 2026) (dismissing, *inter alia*, invasion of privacy and CIPA claims "[g]iven [defendant's] unrefuted evidence"); *Kisting-Leung v. Cigna Corp.*, 780 F. Supp. 3d 985, 999 (E.D. Cal. 2025) (where plaintiffs do not "present any other countervailing evidence," the court may find "no genuine dispute" and determine that plaintiffs lack standing); *Ratner-Stauber*, 2026 WL 2001234, at *18. As in those cases, Plaintiffs have not carried their burden of establishing standing. Their baseless claims should be dismissed with prejudice.

### B. The complaints facially do not establish standing.

Even accepting as true their disproven allegations, both complaints also fail on their face to allege a cognizable Article III injury.

#### 1. Farrell does not allege any Article III injury.

***No privacy harms.*** LinkedIn argued in its opening brief that all Farrell pleads is that LinkedIn went "looking for known browser extension identifiers," Compl. ¶ 24, not that it found any relevant to him, or that it did anything with that. This is not enough for standing. *See Del Salto v. Auction.com, LLC*, 2026 WL 2323527, at *2 (N.D. Cal. 2026) (dismissing privacy claims where plaintiff failed to allege facts to support an inference that private "information was collected about him"). Farrell has no response in opposition except to restate what he pleaded. Opp. 7. But outlining how allegedly private information "may be obtained" about a user by knowing the extensions on their browser does not satisfy Farrell's obligation to allege that LinkedIn actually learned private information about him.

Farrell's reliance on *Doe v. Fullstory* is misplaced. There, the court denied dismissal because the plaintiff plausibly alleged that the defendant's tool actually captured her healthcare-related browsing activity. *See* 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024). Farrell does no such thing: he does not identify a single extension he installed or used, let alone one that LinkedIn detected or that revealed anything about him personally.

As LinkedIn's Motion already explained, where a complaint "does not plead any facts to suggest Defendant collected intimate or sensitive personally identifiable information," generally

alleging that software captures things like "personal details and browsing history, and IP address[es], is insufficient to demonstrate the Defendant's conduct constituted a serious invasion of a protected privacy interest." Mot. 9. Farrell's Opposition makes no meaningful effort to distinguish *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024). *See* Opp. 7 (claiming, with no citation, "that is not what [he] alleges").

As for examining "the facts of each case, including how much information is captured and how it is aggregated or used," *see Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *1 (N.D. Cal. 2025) (Chhabria, J.), Farrell overlooks that the *Lineberry* plaintiffs *actually* alleged that the defendant *connected* data from one site to another. This case is more like *Esparza*, where as-pleaded facts were simply insufficient to plead a privacy interest recognized at common law. *See* 723 F. Supp. 3d at 946; *see also Popa v. Microsoft Corp.*, 153 F. 4th 784, 791 (9th Cir. 2025) (affirming dismissal where plaintiff "does not explain how the tracking of her interactions with the [] website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law").[6]

***No economic harm.*** Farrell offers no counter to LinkedIn's argument that he fails to allege economic harms with sufficient plausibility. *See* Opp. 6-8 (never once discussing sharing of information or economic gain). It appears he concedes his complaint's facial deficiencies.

**2. Ganan does not allege any Article III injury.**

Ganan claims that he pleads six injuries, but his arguments reduce to two common-law injuries: privacy harm (which he identifies as "covert interrogation," "disclosure … to an outside recipient," and "ongoing exposure"), and damage or loss (i.e. "$100 in protective expenditures," "investigation time," and "consumption of … resources"). Opp. 1. Neither common-law harm type is plausibly alleged.

***No privacy harms.*** With respect to his privacy allegations, Ganan fails to show he suffered

[6] Farrell also attacks a straw man argument, when he states that LinkedIn argued that Farrell does not allege collection of his data. Opp. 6. To be clear: LinkedIn argued he failed to allege ***unlawful*** data collection. Mot. 14-15 ("Plaintiffs fail to allege that LinkedIn unlawfully collected or used any personal information, communication contents, or routing data"). Specifically, Farrell failed to allege ***his own*** browser extension data was collected; he alleges that Defendant was merely "looking for known browser extension identifiers," Compl. ¶ 24.

harm because he does not even allege having browser extensions installed. *See Straight v. EdFinancial Servs., LLC*, 2026 WL 2087412, at *3 (N.D. Cal. 2026) (dismissing where plaintiff "d[id] not allege she provided such information to Defendant"). In opposition, Ganan claims "the injury is the unpermitted probe, not its yield." Opp. 4. But that makes no sense at all. *See Popa*, 153 F.4th at 791 (no cognizable injury where plaintiff "identifies no embarrassing, invasive, or otherwise private information ***collected***"); *see also Crano v. Sojern, Inc.*, 2026 WL 167036, at *3 (N.D. Cal. 2026) (dismissing for lack of standing where plaintiff failed to allege anyone "actually ***collected*** Plaintiff's personal information") (emphases added). In other words, he claims that his complaint survives even if LinkedIn never learned whether he had any extensions installed at all because the very act of looking is unreasonably invasive. Such a standard would invite litigation against all manner of basic security practices.

Ganan also claims that LinkedIn's disclosures were unclear, making the detection of extensions highly offensive. Opp. 10-11. Setting aside that he doesn't establish the predicate privacy interest under the reasonable expectation element, *see supra*, LinkedIn plainly disclosed the activity his Complaint describes. *See, e.g.*, Peelish Decl., Ex. 3 at 4 (LinkedIn Privacy Policy stating it collects information about members' "web browser and add-ons"); *id.* (same policy disclosing use of "pixels … to collect data … to recognize you"). Consenting to these policies was a condition of the user agreement to which each Plaintiff must have consented if they created accounts. *See infra*. "Of course, a plaintiff cannot get into court by simply intoning that she suffered an intangible privacy injury." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019) (Chhabria, J.).

***No damage or loss***. Throughout, Ganan's allegations are conclusory. He claims to have spent $100 but offers no details. Compl. ¶ 185. This is insufficient to plead standing, as "[n]o [plaintiff] can be heard to complain about damage inflicted by [his] own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam); *see also Iten v. Los Angeles*, 81 F.4th 979, 990 n.1 (9th Cir. 2023). Ganan also invokes the Spectroscopy system, Compl. ¶¶ 203-04, but as explained *infra*, these allegations do not suffice to show harm (let alone an Article III harm).

## III. THE COMPLAINTS FAIL UNDER RULE 12(b)(6)

### A. Plaintiffs' consent defeats all claims.

Courts in this District regularly consider consent arguments on a motion to dismiss. *See Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *2 (N.D. Cal. 2025) (collecting cases). Farrell himself acknowledges that consent *supports* dismissal where "it is absolutely clear from the allegations in the complaint and judicially noticeable material" that the defense succeeds. Opp. 8; *In re Facebook*, 402 F. Supp. 3d at 790. That "absolutely clear" standard is met here, and the Court may toss these meritless claims now.

#### 1. Plaintiffs agreed to the User Agreement.

There is no question that, as members who logged into LinkedIn, Plaintiffs consented to the User Agreement, Privacy Policy, and Cookie Policy incorporated by reference in their Complaints. *See* LinkedIn Request for Judicial Notice; Peelish Decl. Exs. 2 ("UA"), 3 ("PP"), and 4 ("CP"). Both Plaintiffs allege they created an account and logged into LinkedIn. Ganan Compl. ¶ 22 ("Plaintiff created and maintained a LinkedIn member account"); Farrell Compl. ¶ 26 (defining the proposed class as "all persons in the United States who logged into LinkedIn using a Chrome browser"); *see also id.* ¶ 21 (referencing "LinkedIn accounts are tied to real names"). To create an account, and thus log in, members must affirmatively agree to the User Agreement during setup. *See* Mot. 11. Plaintiffs therefore necessarily agreed to the User Agreement, which incorporates LinkedIn's Privacy Policy and Cookies Policy. *See* UA at 2 ("By creating a LinkedIn account … you are agreeing to enter into a legally binding contract with LinkedIn … the collection, use, and sharing of your personal data is subject to our Privacy Policy [and] our Cookie Policy and other documents referenced[.]").

***Plaintiffs do not deny*** that they agreed to the User Agreement, Privacy Policy, or Cookies Policy. Farrell's quibbling about whether LinkedIn has done enough on this Motion to demonstrate account creation is disingenuous; if Farrell did not consent to these policies, he could not have had an account or used the platform. *See* Farrell Opp. 9.[7]

---

[7] Plaintiffs' contentions about the application of LinkedIn's current policies to their claims of ongoing harm should be ignored. *See* Farrell Opp. 9-10, Ganan Opp. 5-6. Any ambiguity about which policies they agreed to is a gap they made, having failed to allege when they signed up for

**2. The User Agreement and incorporated policies disclose the alleged activity.**

When Plaintiffs finally engage with the policies that govern their allegations, they insist on disclosure at a level of specificity that no law or precedent requires. The standard is what a reasonable user would understand, not whether one would understand the technicalities of how security protocols protect against bot or scraping activity. *See Lakes v. Ubisoft, Inc*., 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (rejecting plaintiffs' argument that a "highly granular disclosure" was required for consent). The policies plainly disclose that LinkedIn will monitor "browser plugins and add-ons," that it will use the data to protect the platform and users, and that in some cases data is shared with vendors, in language covering precisely the allegations at issue.[8] LinkedIn's policies make clear to reasonable internet users that, *inter alia*:

- Users should not "use software … (such as crawlers, **browser plugins and add-ons** or any other technology) to scrape or copy the Services" or "[u]se bots or other unauthorized automated methods to access [LinkedIn's] Services," UA at 8-9 (emphasis added);
- LinkedIn or its vendors may access "information about your network and device (e.g., IP address, proxy server, operating system, **web browser and add-ons**, device identifier and features, cookie IDs and/or ISP, or your mobile carrier)," PP at 4 (emphasis added);
- LinkedIn may use such information including about a user's browser and add-ons, to "prevent or investigate possible fraud or other violations of the law, [its] User Agreement and/or attempts to harm [its] Members, Visitors, company, Affiliates, or others," *id.* at 8; to "detect malicious activity and violations of our User Agreement," CP at 2; and to "[i]nvestigate…complaints and for Service issues," PP at 8;
- LinkedIn "may use others to help [it] with [its] Services," including "fraud detection [and] customer support," and they "will have access to your information…as reasonably necessary to perform these tasks on [LinkedIn's] behalf and are obligated not to disclose or use it for other purposes," *id.* at 10.

These disclosures put reasonable internet users on notice that LinkedIn or its security vendors may collect information about users' browser add-ons or extensions, including to

accounts or even when their alleged harm began. On this record, the only policies that obviously apply to this litigation are the ones in effect at its start—and which LinkedIn submitted with its Motion to Dismiss. *See generally*, Peelish Decl. Exs. 2, 3, 4; *see also* Ganan Compl. ¶ 36 (referencing investigation from 2025 to 2026–when these policies applied).

[8] Farrell replies that "add-ons" may not mean "extensions." Farrell Opp. 10. Even for lawyers, there is a limit to the utility of semantics. Those terms are plainly synonymous and the Court can, with common sense, find as much. *See* Hari Holla, *Understanding Browser Extensions and Their Risks*, CrowdStrike (Feb. 17, 2025), https://www.crowdstrike.com/en-us/cybersecurity-101/exposure-management/browser-extensions/ (noting the terms "extensions" and "add-ons" are used interchangeably).

determine whether there have been violations of the User Agreement or instances of fraud.

Plaintiffs' cases are not to the contrary. For example, *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. 2013), found disclosures insufficient where Google's terms only disclosed that email content "may be intercepted under a different set of circumstances for a different purpose" than that plausibly alleged. In *Campbell v. Facebook*, *Inc.*, 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014), the court found disclosures were insufficient where Facebook was alleged to have "scann[ed] users' [private] messages" for targeted advertising but the privacy policy did not include any reference to "messages," while here LinkedIn expressly tells users it may collect information about their **web browser and add-ons**. *See also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (general disclosures about personal data insufficient to provide notice that "personal health information" may be collected). And unlike in *D.B. v. Bellesa Enters. US, Inc.*, 2026 WL 2058427, at *14, (C.D. Cal. 2026) where the court found disclosures insufficient because "the general theme of the [policy] is that personal information will not be redistributed," LinkedIn here tells users it may deploy third parties for fraud detection and that they may have access to certain user information. *See supra*.

In sum, Plaintiffs demand far more than law requires. Under their erroneous reading, LinkedIn must provide detailed explanations of how its anti-fraud systems function, which would serve the opposite purpose by putting bad actors on notice on how to manipulate LinkedIn's defenses. The standard is reasonableness, and neither Farrell nor Ganan cite a single case that requires the level of granularity they seek.

### B. Plaintiffs fail to state plausible invasion of privacy or intrusion upon seclusion claims.

Neither complaint pleads invasion of privacy or intrusion upon seclusion with sufficient plausibility. Even accepting their allegations as true, there is no plausible inference that LinkedIn identified any of the extensions that it searches for on either Plaintiff's browser; neither Plaintiff even alleges having an extension that LinkedIn searches for (and Ganan never even claims to have an extension installed). Ganan Opp. 4; Farrell Opp. 7 at lines 4-8, 18-25 (glossing over his failure to allege LinkedIn detected any extensions on his browser). Nor is there a plausible inference that

the information is on their computer or somehow private to them. *See supra*, II.A.

Even if there were a plausible inference that either Plaintiff reasonably expected privacy over whether they had certain extensions installed, it is not plausibly highly offensive. As explained *supra*, LinkedIn's policies clearly disclose the collection of information about a member's browser extensions, the possibility of using member data for security reasons, and the use of third-party vendors and scripts like those at issue here. Why would it be highly offensive for a service to examine publicly accessible data to identify when members are violating its policies with the use of browser add-ons? Plaintiffs have no answer.

***Farrell lacks plausible allegations.*** Instead of alleging that he had extensions detected, Farrell points to a generic statutory definition that arguably covers electronic network activity within a reasonable expectation of privacy. This is not enough; it does not establish that anything private or sensitive or embarrassing about him was uncovered. *See* Mot. 17. Nor could the alleged conduct be "highly offensive" when Farrell fails to allege that LinkedIn actually links any browser extension information to him, claiming only as a metaphysical possibility that LinkedIn "***can*** link that data to actual individuals." Opp. 14; *see also* Mot. 17-18.

Farrell also claims that he had a reasonable expectation of privacy in his extension data because the alleged scanning was not disclosed. Setting aside that his reference to disclosure invites the application of the consent doctrine described *supra*, the fact remains that the activity *was disclosed*. Farrell's authorities do not counsel otherwise—in the cases he cites, an invasion of privacy was plausibly pleaded because defendants allegedly engaged in the very conduct they promised not to do. *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) ("[Google] represented to the plaintiffs that their information would not be [sold] but then proceeded to [sell] it anyways"); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. 2025). Farrell makes no such argument here.

***Ganan lacks plausible allegations.*** Despite the accumulation of allegations in his overwrought pleading, Ganan never alleges he had any extensions detected, let alone that any sensitive inferences were drawn about him. And his citations are inapposite. *See* Opp. 10

(discussing *In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *6 (N.D. Cal. 2026)). In *Meta Android*, plaintiffs alleged that "members of the public were shocked and concerned" about "surreptitious data collection when individuals were not using Facebook." *Id.* Similarly, *In re Facebook* concerned distinguishable claims. 402 F. Supp. 3d at 797 (in describing the Cambridge Analytica scandal, observing that Facebook, *inter alia*, "allegedly disclosed the contents of communications between two people on [its] ostensibly private messenger system"). Ganan alleges nothing of the sort. Repeatedly claiming "interrogation" and "covert" doesn't cut it.

**C. Plaintiffs fail to state CDAFA claims.**

**1. Plaintiffs do not plausibly allege damage or loss.**

LinkedIn explained how neither Plaintiff plausibly alleged the "damage or loss" required under CDAFA. Nothing in either Plaintiff's Opposition persuades to the contrary.

***Farrell's disgorgement theory fails on its face.*** Farrell does not even argue that he suffered any sort of trespass harm that could suffice to establish "damage or loss" under the statute (despite his earlier insistence that he pleaded a trespass harm sufficient to establish Article III harm). For the same reasons he does not allege a trespass harm sufficient for constitutional standing, he fails to allege statutory standing.

Instead, Farrell clarifies that his claim for loss under the statute is a disgorgement theory, relying on cases holding that alleged data exposure or use itself demonstrates sufficient economic interest even absent allegations of the data's economic value. *See* Farrell Opp. 15-16 (listing cases). In those cases, however, plaintiffs pleaded a clearly explained economic use (i.e., sale of data). *See Smith*, 2025 WL 2210002, at *3; *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *5 (N.D. Cal. 2026). Here, Farrell's allegations are conclusory, providing no explanation as to how HUMAN or LinkedIn would actually use the browser extension data commercially.

Moreover, the weight of authority rejects Farrell's theory that the mere use of data, without plausible allegations of its economic value, constitutes cognizable loss. *See Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *8-9 (N.D. Cal. 2026) (rejecting *Smith v. Rack Room*'s reasoning and dismissing disgorgement-based CDAFA claim where plaintiffs failed to allege they intended

to profit from their data or that its use diminished its value). As this Court has recognized, dismissal is warranted where a CDAFA claimant "neither alleges that there is a market for individual people's browsing activity, nor anything about what the actual value of the plaintiffs' data could be." *Lineberry*, 2025 WL 551864, at *2. So too, here, where Farrell does not plead the data is even sold or even sellable. The paragraphs he relies on provide no information about how his data is "valuable," *see* Compl. ¶¶ 51, 54. As a result, "the complaint fails to allege that the plaintiffs' losses are anything other than 'purely hypothetical.'" *Lineberry*, 2025 WL 551864, at *3 (quoting *In re Facebook*, 402 F. Supp. 3d at 784 (dismissing similarly speculative economic loss theory on Article III standing)).

***Ganan's boilerplate allegations cannot sustain the claim.*** Unlike Farrell, Ganan does not assert the diminished market value of data or loss of control. *See* Opp. 12, n.16. Instead, he puts his CDAFA chips in the basket of the $100 he allegedly spent responding to and trying to prevent the allegedly unauthorized access. *Id.* These conclusory allegations are insufficient. *See Rack Room Shoes*, 2025 WL 1085169, at *6 (dismissing CDAFA claim for failure to state non-conclusory allegations of economic injury); *see also In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *6-7 (N.D. Cal. 2013) (partially dismissing CDAFA claims where plaintiffs "d[id] not allege facts that identify the nature of those costs"). He also suggests his computer was forced to expend "processing time, network resources, storage interactions, and other computer services," Opp. 12, but he offers no explanation of how or how severely. *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. 2023) (dismissing CDAFA claim for "fail[ure] to plead any facts supporting an inference that Defendants … caused any cognizable loss").

As a last straw, he claims he suffered data misappropriation, relying on *Lineberry.* Ganan Opp. 13. But that decision *dismissed* a CDAFA claim because of the plaintiffs' failure to sufficiently allege data misappropriation. His other support merely parrots the *Lineberry* holding. *See id.* (citing *Intus Care, Inc. v. RTZ Associates, Inc.*, No. 24-cv-01132, ECF No. 117 (N.D. Cal. Apr. 23, 2026) (a two-page discovery order)). It all amounts to nothing: Ganan fails to allege how the data could be valuable to him, so he fails to demonstrate the necessary loss element.

**2. Plaintiffs do not plausibly allege unauthorized access.**

Plaintiffs claim that LinkedIn connects publicly available information in web accessible resources folders with information that members intentionally make available to the platform—not any form of unauthorized access to their data. The only data involved that could be construed as Plaintiffs' is the account information they chose to provide; extension ID information is kept in folders that extension developers create and maintain. At any rate, Plaintiffs' consent to the alleged conduct, *see supra*, defeats their "without authorization" allegations.

***Farrell concedes the point.*** LinkedIn explicitly contended that Farrell failed to plausibly allege without authorization—and Farrell had no response on this element. *See* Farrell Opp. 14-16. His CDAFA claim thus fails for that reason (in addition, of course, to all the others).

***Ganan's circumvention theory is baseless.*** Ganan claims that he pleads that LinkedIn's DOM monitoring demonstrates a form of "overcom[ing] technical or code-based barriers," Opp. 13, but the reasoning is upside down. LinkedIn looks for alterations made by scrapers and other extensions on its DOM, its webpages, for good reason: some extension developers may circumvent its reliance on web accessible resources with software that can cause harm by changing the way LinkedIn appears to users. *See, e.g.*, Howell Decl., Ex. E, ECF No. 34-6 at 7 (explaining how developers can eschew the WAR file to evade some forms of detection). This isn't LinkedIn "circumventing" "Google architecture" nor anything of Plaintiff's—it's LinkedIn protecting its services against extensions that work around *its* detection architecture, by observing what those extensions do to its own webpages.

**D. Farrell fails to state a right to publicity claim.**

Farrell does not allege that any advertisements use his identity. *See* Mot. 19. His response, Opp. 17-18, is to repeatedly invoke two paragraphs in his complaint: alleging that LinkedIn built a dossier about him so that it "*could* use his name and likeness," Compl. ¶ 25 (emphasis added), and concluding that LinkedIn sought "to amass profiles and build dossiers," used to advertise its products to Plaintiff and "solicit the purchase of its products … and/or services," *id.* ¶ 87.

The former allegation, however, merely "identifies potential harms that *might* be associated with [a] technology," which is insufficient to state a plausible claim. *See Popa*, 153 F.4th at 791

n.5. And the latter allegation is conclusory absent any factual allegation to support it. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024); *see also Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *4 (N.D. Cal. 2021) ("Section 3344 cases suggest that more is needed beyond using the profiles."). Farrell flags that LinkedIn may use information it collects and intercepts to increase "growth and engagement," Compl. ¶ 25, but he fails to allege that the information at issue is the same information that LinkedIn uses to drive revenue.

At bottom, Farrell's claims are "categorically different from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to promote a product or service." I*n re Facebook*, 402 F. Supp. 3d at 803. Knowing if a user has operated a prohibited extension on LinkedIn's platform and using that information for security purposes is not the same thing as appropriating a person's name or likeness. *See Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *4 (N.D. Cal. 2021) ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service.").

**E. Ganan fails to state CIPA or ECPA claims.**

CIPA is a criminal statute that warrants applying the rule of lenity. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (Chhabria, J.). Ganan's specious allegations do not make out a claim for violations under either its wiretap or pen register sections (nor for the related federal claim).[9] But even if the statute were ambiguous enough for Ganan's scattershot allegations to hit the mark—and they don't—the Court should dismiss the claims now via a strict construction of the statute that excludes LinkedIn's standard security practices from its reach. *See, e.g.*, *Merical v. The Joint Corp.*, 2026 WL 2225531, at *17 (E.D. Cal. 2026) (determining that Section 631(a) does not apply to the internet).

***The data are not contents.*** "Content-bearing page-context fields" are not contents of a communication for purposes of the CIPA Section 631. Mot. 8, 21-22. That the data are not contents

[9] Ganan claims LinkedIn did not attack all ECPA theories alleged, but he misses the forest for the trees: ECPA only applies to contents in transmission. *See* Mot. 24; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105 (9th Cir. 2014). The data here are not contents nor intercepted in transmission, so the ECPA claims fail just like the CIPA claims that they mirror. And Section 2511(3)(a)'s "divulgence prohibition" still has a contents and transmission requirement.

similarly defeats his ECPA claim. *Id.* 24. Ganan replies that his allegation about information that "relayed what [he] w[as] doing" is sufficient. Opp. 15. He is wrong. *See Heiting v. Taro Pharms., USA, Inc.*, 709 F. Supp. 3d 1012, 1018 (C.D. Cal. 2024). Page-context fields are ***not*** contents, *see id.*, and the complaint fails to allege a plausible theory to the contrary. Saying that LinkedIn gathered data which "relayed" what Farrell was doing is insufficient to state a claim that LinkedIn gathered the contents of what Farrell was communicating. *In re Zynga*, 750 F.3d at 1107 (contents "do[] not include record information regarding the characteristics of the message that is generated in the course of the communication").

***The data are not "in transit".*** Ganan also asserts that LinkedIn's "interception occurs on the user's own computer, in California, at the instant of transmission." Opp. 15. But, as LinkedIn explained, Mot. at 22, Ganan never plausibly alleges that the contents were *read* in transit. In any event, "[u]sing a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1119. As in that case, it "would not be appropriate to interpret the 'in-transit' requirement of Section 631(a) so broadly as to cover the conduct at issue here." *Id.*

***Ganan fails to allege a predicate violation for aiding and abetting.*** Even if Ganan sufficiently alleged "contents" and "in-transit," he does not allege a predicate violation as required for the third-clause of Section 631(a). Mot. 22-23. In *Love v. Ladder Financial, Inc.*, this Court dismissed similar claims where the plaintiff quoted only the vendor's privacy policy, with no pleaded mechanism by which the vendor reached the data. *See* 2024 WL 2104497, at *2 (N.D. Cal. 2024) (Chhabria, J.). Ganan seeks to distinguish his pleading by stating that he relied on a vendor's "published policy," Opp. 16, but *Love*, too, examined a "published policy" and determined that "merely quoting these lines from the policy and then making broad assertions about use is not enough." 2024 WL 2104497, at *2. This dooms his reasoning.

Moreover, Ganan fails to allege aiding and abetting given that the vendors are "an extension of the company." *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. 2023). He strives to distinguish *Martin* and *Heiting v. Taro Pharmaceuticals USA, Inc.*, 2024 WL 3738055 (C.D. Cal. 2024), claiming that he pleaded the vendor's own use in a way that those

plaintiffs did not. Opp. 17. But he provides no explanation as to how his conclusory allegations are meaningfully different. *Compare* Compl. ¶¶ 73-74, *with Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (determining allegations like "secretly intercept in real time, eavesdrop upon and store transcripts of" chat communications was insufficient to plead the in transit requirement) (cited with approval in *Taro Pharms.*).

***The data are not routing data.*** Ganan contends that his pen register count concerns "non-content dialing, routing, addressing, and signaling information," Opp. 9, and he relies on, while omitting key context, dated authority to suggest such data are "indistinguishable from pen-register addressing data," Opp. 18; *see U.S. v. Forrester*, 512 F.3d 500, 505 (9th Cir. 2008) (involving government surveillance using a court-authorized pen register). In distinguishing LinkedIn's authorities, Ganan paints those cases as involving "thinner pleadings," even as his reasoning highlights their similarities. *See, e.g.*, Opp. 19 (claiming *Heiting v. HP Inc.*, 2025 WL 2993673, at *3 (Cal. Super. Ct. 2025) is distinguishable because nobody there alleged monitoring "who else contacts Plaintiff," even though his own complaint likewise makes no such allegation). Ultimately, Ganan's technical jargon is a smoke show; his allegations all concern "information about Plaintiff's device—not information about incoming communications to the device of Plaintiff[.]" *Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671, at *4 (Cal. Super. Ct. 2025). This may explain his choice to plead the pen register claim as "alternative and inconsistent" with his Section 631(a) and ECPA claims. Opp. 18. It's a last-ditch effort to maintain this case. It fails.

## IV. CONCLUSION

For the foregoing reasons, Farrell and Ganan's complaints should be dismissed in their entirety. Leave to amend is not, on this record, warranted—for either Plaintiff.

Dated: August 18, 2026

COOLEY LLP

By: */s/ Simona Agnolucci*
Simona Agnolucci
Eduardo Santacana
Natalie Peelish (A*ppearance Pro Hac Vice*)

Attorneys for Defendant
LINKEDIN CORPORATION

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 18, 2026

COOLEY LLP

By: */s/ Eduardo Santacana*
Eduardo Santacana

Attorney for Defendant
LINKEDIN CORPORATION